### UNITED STATES of America, Plaintiff–Appellee,

v.

### Leon A. COHEN, Defendant–Appellant.

### No. 79–5359.

United States Court of Appeals, Fifth Circuit.

Dec. 4, 1980.

Rehearing and Rehearing En Banc Denied Jan. 8, 1981.

Robert Eugene Smith, Encino, Cal., for defendant–appellant.

Gerrilyn G. Brill, Asst. U. S. Atty., Atlanta, Ga., for plaintiff–appellee.

Before GOLDBERG, CHARLES CLARK and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

Leon Cohen appeals from his conviction under three counts of an indictment charging him with impersonating a federal official, giving a false statement in a matter within a federal agency's jurisdiction, and conspiring to commit the impersonation offense, 18 U.S.C. §§ 912, 1001, and 371, respectively. Throughout the trial Cohen's participation in the impersonation scheme was not contested; his theory of defense was duress, that his co–conspirator forced him to cooperate. On appeal he argues that the lower court erred (1) in refusing to direct a verdict of acquittal on the impersonation count on the ground that the indictment was insufficient to state an offense under the statute; (2) in excluding testimony of out–of–court statements said to be admissible under the state–of–mind exception to the hearsay rule; (3) in refusing to confer immunity to prospective defense witnesses who indicated an unwillingness to testify to certain matters; (4) in refusing to charge or permit the defense to comment upon the inference that might be drawn from the absence at trial of the victim of the scheme; and (5) in charging the elements of the defense of duress. We affirm for the reasons that follow.

Cohen argues first that the impersonation count of the indictment is insufficient because it twice alleges the same element, that he pretended to be a federal official. He correctly notes the conjunctive elements of the offense: whoever falsely assumes or pretends to be an officer acting under the authority of the United States, *and* acts as such, is guilty of a felony. 18 U.S.C. § 912. Cohen argues that if the "acts as such" element is not surplusage, it must be understood to require something more than merely "assuming or pretending," and therefore that any indictment which alleges that the accused "acted as such" by committing acts that are in keeping with the pretended character fails to allege anything more than that he assumed or pretended. *Cf. United States v. Rosser*, 528 F.2d 652, 657 (D.C. Cir. 1976) (*dictum* that act that completes the crime "must be something more than merely an act in keeping with the falsely assumed character"). Such an expansive reading of the words "assumes or pretends," however, foreclosing any allegation that the accused acted *as such*, would undermine the clear purpose of the statute. The subject of the statute is both a state of mind and of action. An indictment sufficiently describes the first of these elements when it alleges that the accused falsely assumed and pretended with intent to defraud, and the second when it alleges any overt act consistent with the assumed character. The indictment in this case specifically alleged that Cohen "acted as said Michael J. Egan by signing in at the Atlanta Federal Penitentiary as M. J. Egan, Jr. and representing to Leslie T. Atkinson, an inmate at the penitentiary that he was

the Associate Attorney General . . . ." R. 1. This is sufficient to describe "acting" even though it also describes "assuming and pretending."

■ Cohen next complains that the lower court erred in excluding evidence of out–of–court conversations. Witnesses were called by the defense for the purpose of corroborating Cohen's later direct testimony concerning alleged threats by Galkin, the co–conspirator. They were asked to relate the substance of out–of–court conversations they had had with Cohen at the time he was supposed to have been threatened, and some testimony was admitted. They would have testified to comments made by Cohen to the effect that Galkin was threatening him.[1] Appellant seeks to stretch the limited scope of admissibility under F.R.E. 803(3). That rule by its own terms excepts from the ban on hearsay such statements as might have been made by Cohen of his then existing state of mind or emotion, but expressly excludes from the operation of the rule a statement of belief to prove the fact believed.[2] The rule thus permitted the witnesses to relate any out–of–court statements Cohen had made to them to the effect that he was scared, anxious, sad, or in any other state reflecting his then existing mental or emotional condition. And this for the purpose of proving the truth of the matter asserted in the statement—that Cohen actually was afraid or distraught—because the preamble to F.R.E. 803 provides that such testimony "is not excluded by the hearsay rule." But the state–of–mind ex-

ception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind. If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition–"I'm scared"–and not belief–"I'm scared because Galkin threatened me." Cohen's witnesses were permitted to relate any direct statements he had made concerning his state of mind but were prevented only from testifying as to his statements of belief–that he believed that Galkin was threatening him. There was no error.

■ Cohen also complains that his sixth amendment compulsory process rights and fifth amendment equal protection and due process rights were denied because use immunity was not granted to the witnesses Atkinson and Lynott. He bases his contention on the fact that the Government immunized one of their primary witnesses, Tipton. Cohen did not seek such immunity in the trial court for Atkinson nor do we comprehend any conceivable prejudice that would have resulted had such a request been made and denied. Atkinson, the intended victim of the impersonation, had to know Cohen only in his pretended character, and therefore could not have been familiar with Galkin's alleged threats. Cohen also failed to demonstrate that the grant of immunity to Lynott was required to preserve fundamental fairness in the trial.

---

1. Appellant misstates the scope of the lower court's alleged error in limiting the testimony of witnesses Hoytt and Kaplan. The rulings objected to, as is clear from counsel's statement from the record at R. 5–71, concerned the testimony of Nixdorff and those who testified after him, Rappaport and Mrs. Cohen. The court did not limit the testimony of Hoytt and Kaplan; counsel's own questions, and his effort to introduce their testimony via F.R.E. 803(3), nevertheless had that effect.

2. F.R.E. 803(3) provides:
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

   .    .    .    .    .

   (3) Then existing mental, emotional, or physical condition.–A statement of the de-

clarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The Advisory Committee Notes make it clear that the "exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."

Appellant relies on *U. S. v. Morrison*, 535 F.2d 223, 229 (3rd Cir. 1976), where the court refers to use immunity for a defendant's witness as follows:

> There are circumstances under which it appears due process may demand that the Government request use immunity for a defendant's witness. See dicta in *U. S. v. Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955, 985 n. 79 (1974) (concurring and dissenting opinion of Bazelon, C. J.); and *cf. Earl v. U. S.*, 124 U.S.App.D.C. 77, 361 F.2d 531, 534 n. 1 (1966) (Burger, J.). Such a circumstance was created in this case when prosecutorial misconduct caused the defendant's principal witness to withhold out of fear of self–incrimination testimony which would otherwise allegedly have been available to the defendant.

In *Morrison* there was a clear showing of prosecutorial misconduct.[3] Here there is shown *no misconduct whatsoever* on the part of the U.S. Attorney. Lynott did testify at length about discussions between himself and Galkin in which Galkin was asking Lynott to help him locate someone who would kill Cohen. Lynott refused to testify, upon advice of his personal counsel who was present at the Cohen trial, with respect to Galkin's alleged past activities in trafficking in drugs. Defendant's purpose in seeking admission of that testimony was to impeach Galkin, who had earlier testified that he had not been involved in criminal activity with respect to contraband drugs.

The defendant sought to show by Lynott that Galkin had been involved in drug law violations as a means of attacking Galkin's credibility. Rule 608(b) defines the limits of such testimony:

> Rule 608. Evidence of Character and Conduct of Witness
>
> . . . . .
>
> (b) Specific instances of conduct.–Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross–examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross–examined has testified.

. . . . .

■ It is doubtful that the original cross–examination of Galkin about his drug trafficking was appropriate under (b)(1), but there was no objection. When such testimony does go in, "the examiner must take his answer,"[4] and the examiner cannot offer impeachment testimony. As Rule 608 states, "[s]pecific instances of the conduct of a witness, for the purpose of attacking . . . his credibility . . . may not be proved by extrinsic evidence," and the following authority is illuminating on the subject:

> Prior to Allende's cross–examination of Silsbee the trial court ruled that on cross–examination of Silsbee Allende might inquire as to the other piece of hashish but that he could not, in the event of Silsbee's denial, use the suppressed evidence to impeach her. It is Allende's theory that had the severance been granted and had Silsbee denied possession of the other hashish Allende might then have used the suppressed evidence to impeach Silsbee and that hence Allende was prejudiced by the court's refusal to sever. The theory fails because Allende's rights to cross–examine and impeach Silsbee were not impaired by the court's ruling. At this time in the federal courts a witness may not be cross–examined as to acts of misconduct not resulting in a felony conviction. *Ingram v. United States*, 106 F.2d 683 (9th Cir. 1939); *United States v. Provoo*, 215 F.2d 531 (2d Cir. 1954). The proposed Rules of Evidence §§ 608–609 (Moore's Federal

---

3. For an excellent discussion of the cases in this difficult area, *see United States of America v. DePalma*, 476 F.Supp. 775 (S.D.N.Y. 1979).

4. *Weinstein's Evidence*, Vol. 3, § 608[5].

Practice, Temporary Pamphlet, 1973) may broaden the existing rule by permitting cross–examination of a witness as to acts of misconduct clearly probative of untruthfulness. Here, even assuming that questions as to the possession of hashish would bear upon Silsbee's untruthfulness, the Proposed Rules would not, upon her denial of the possession, permit extrinsic proof. It follows that the trial court did not deny to Allende any rights under either existing or proposed rules of evidence and that the refusal to sever was not error. [Footnote omitted.]

*United States v. Allende,* 486 F.2d 1351, 1354 (9th Cir. 1973). Since Cohen was not entitled to cross–examine Lynott as desired, he was not entitled to have the testimony compelled.[5]

 Finally, Cohen directs two challenges at the charge. He argues that the lower court erred in refusing to charge, and in prohibiting counsel from arguing, that an unfavorable inference might be drawn from the Government's failure to call Atkinson as .a witness. In addition, he argues that the principal and supplemental charges consisting of the elements of the defense of duress were unfair, unbalanced, and not adjusted to the facts. The correct standard of review to be applied to jury instructions is whether the court's charge, viewing principal and supplemental instructions as a whole and not taking any part out of context, was a correct statement of the law.[6] Upon a careful review of the instructions and objections thereto, we conclude that the defense of duress was correctly charged.[7] The refusal to permit a missing witness charge or argument was the subject of a motion in limine by the Government, R. 54, which had been granted prior to trial. As stated in the motion, the Government had reason to believe that if called to the stand Atkinson would refuse to testify as to any matters concerning Cohen's impersonation that would tend to incriminate him. Be-

lieving that it would be improper to call a witness whose refusal to testify would adversely reflect on the accused, counsel for the Government merely sought to protect its position in not calling Atkinson by preventing opposing counsel from arguing for a favorable inference from the fact that he did not testify. As noted, Atkinson's testimony had no demonstrable relevance to the only material issue in the case, duress, and Cohen's participation in the scheme throughout was not contested. The court properly enforced its order in its rulings on instructions and argument.

AFFIRMED.

---

5. *Cf. Cloud v. Thomas,* 627 F.2d 742 (5th Cir. 1980) (sixth amendment does not require admission of all character evidence probative of truthfulness of witness even though evidence may be of help to jury).

6. *U. S. v. Sanfilippo,* 581 F.2d 1152, 1154 (5th Cir. 1978); *U. S. v. Chandler,* 586 F.2d 593, 606 (5th Cir. 1978).

7. *See, e. g., U. S. v. Furr,* 528 F.2d 578, 580 (5th Cir. 1976), and cases cited therein.