47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwight EMERSON, Defendant-Appellant.
 No. 94-5710.
 United States Court of Appeals, Sixth Circuit.
 Feb. 10, 1995.
 
 Before: NORRIS and DAUGHTREY, Circuit Judges, and FEIKENS, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant, Dwight Emerson, was convicted in the district court of impersonating a government agent, in violation of 18 U.S.C. Sec. 912. After being sentenced to 36 months of probation, he appealed his conviction, claiming insufficient evidence to support the jury's verdict and error in the admission of certain evidence at trial. We find no reversible error and affirm.
 
 
 2
 This case began when the defendant approached the victim, Schuyler Anderson, to inquire about the possibility of contracting with Anderson to clean boats at Anderson's Louisville marine repair facility. After three days of negotiations, Anderson rejected Emerson's offer. According to Anderson, Emerson became extremely angry, went to his car, and pulled out a breast-pocket billfold and brochure. He shoved these items (one of which appeared to be marked as FBI identification) at Anderson, told Anderson that he was an FBI agent, said that he was going to "take [Anderson] downtown" for questioning, and insisted that Anderson get in the car. Emerson did not use the word "arrest" and, at some point, mentioned that "he would give [Anderson] lunch while [they] were downtown." Anderson testified, however, that Emerson's proposal did not come across as an invitation to "a friendly lunch engagement." He refused to get in the car, and Emerson finally left.
 
 
 3
 At a one-day jury trial, Anderson testified about these events. He also stated that after Emerson left, he called the local FBI office and was told that Emerson was not an FBI agent. FBI Special Agent David Craddock also testified that Emerson was not an FBI agent. Furthermore, Craddock stated that when Emerson arrived at the FBI office for questioning, he brought his passport and an FBI brochure listing himself as an FBI contact. At that time, the passport did not have the red letters "FBI" on it, as Anderson indicated the credentials Emerson presented to him as official identification did. Later, after Craddock's interview with Emerson, Craddock asked Emerson's parents to send him these two items and they complied.
 
 
 4
 Months after the indictment was issued and four days before trial, Emerson moved the court to suppress the passport and the brochure, alleging that they were illegally seized from his car. However, before trial, the government explained that it got the two items from his parents, and the matter was not pursued further. Both items were introduced at trial. Based on all of this evidence, the jury convicted Emerson.
 
 
 5
 On appeal, the defendant first claims that he was convicted on the basis of insufficient evidence, because the government failed to prove each element of the statute under which he was convicted. Under 18 U.S.C. Sec. 912,
 
 
 6
 [w]hoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both.
 
 
 7
 Emerson contends that the government failed to prove that he "act[ed] as such", because it allegedly did not prove that he performed an overt act asserting the authority that he claimed to have as an FBI agent. He cites several cases analyzing the "acts as such" element of Sec. 912. Primarily, he relies on United States v. Larson, 125 F.Supp. 360 (D.Alaska 1954), in which the court dismissed an indictment alleging that Larson pretended to be an FBI agent investigating a crime, finding that the defendant's statement that he was investigating a crime was a "mere repetition of the false representation". The defendant also relies upon United States v. York, 202 F.Supp. 275 (E.D.Va. 1962), an opinion refusing to hold a woman responsible under the statute for falsely stating on her credit application that she was employed by the FBI. The York court found that because she did not pretend to act "under the authority of the United States government" when buying clothes and applying for credit, she was within the law.
 
 
 8
 Relying upon these cases, Emerson has presented two bases for dismissal of the impersonation charge on appeal. First, he argues that his demand that Anderson come with him "downtown" and his reference to lunch were "mere repetition of the false representation itself" and, thus, inadequate as a separate overt act. Moreover, citing York, he insists that because his demands on Anderson were not part of an FBI agent's duties, he was not pretending to act under federal authority. Rather, he claims, his activity should have been viewed as similar to York's application for credit. In arguing this claim, Emerson notes that Craddock testified that his FBI responsibilities included recruiting new FBI agents, speaking at schools, investigating criminal activity, and arresting people. Because Emerson insists that he did not exercise any of these responsibilities, he argues that he did not pretend to act "under the authority of the United States", as is necessary under the statute.
 
 
 9
 We are convinced from our review of the record that Emerson's conviction was based upon sufficient evidence. The government proved that the defendant impersonated an officer of the United States by presenting bogus FBI identification and then acted upon this impersonation by ordering Anderson into a car. Although cases differ with regard to the amount of independence that the overt act must have from the defendant's original act of impersonation, a review of the cases indicates that the defendant's activity in this case qualifies under any standard as sufficient.
 
 
 10
 For example, the Second Circuit has let stand the conviction of a defendant who carried a gun and then stated that he was an FBI agent. The court noted that 18 U.S.C. Sec. 912 requires "a false claim of federal authority going above and beyond mere bravado" and held that the defendant's conduct met this standard. United States v. Wells, 893 F.2d 535 (2d Cir. 1990). In United States v. Parker, 699 F.2d 177 (4th Cir.), cert. denied, 464 U.S. 836 (1983), the court found that a defendant had violated the statute by telling a firewood seller that the defendant was an I.R.S. agent who was investigating the seller. In United States v. Cohen, 631 F.2d 1223 (5th Cir. 1980), the "act" became subsumed in the "pretense". That case involved a defendant who falsely signed in at a federal penitentiary under the name of an Assistant United States Attorney and also told an inmate that he was an Assistant United States Attorney. Cohen found that the indictment's facts were "sufficient to describe 'acting' even though [they] also describe[d] 'assuming and pretending'." Id. at 1225. In United States v. Gayle, 967 F.2d 483 (11th Cir. 1992), cert. denied, 113 S.Ct. 1402 (1993), the Eleventh Circuit adopted Cohen's approach permitting an overt act to be part of the act of impersonation, and accepted "any overt act consistent with the assumed character". As support, Gayle cited the Supreme Court's statement in United States v. Lepowitch, 318 U.S. 702, 704 (1943), that "[t]he most general allegation of impersonation of a government official, therefore, sufficiently charges this element of the offense". See Gayle, 967 F.2d at 488. The court in Gayle thus concluded that "an indictment need not allege additional acts beyond the general act of impersonation". Id. At the opposite end of the spectrum is United States v. Rosser, 528 F.2d 652, 657 (D.C.Cir.1976), in which the court required "something more than merely an act in keeping with the falsely assumed character". Despite these case distinctions, we conclude that Emerson's actions in attempting to transport Anderson away from the marina are sufficient even under the most rigid test to establish that Emerson acted as an FBI agent within the meaning of 18 U.S.C. Sec. 912.
 
 
 11
 The two district court cases upon which the defendant relies are distinguishable, moreover. In Larson, the district court dismissed an indictment charging the defendant with impersonating a federal officer and falsely acting as such by stating that he was an FBI special agent investigating a crime, on the ground that the statute requires that the accompanying act to be "something more than mere repetition of the pretense, such as solicitation, inquiry, demand for information, or the like". 125 F.Supp. at 361. Although Emerson argues that his case involved mere "repetition of the pretense", an attempted arrest is more than a solicitation or inquiry. In any event, we believe that Larson is based on questionable reasoning and too strict an interpretation of Sec. 912's "act" requirement, because a solicitation or inquiry in addition to one's impersonation may well be sufficient to satisfy the "acts as such" element of Sec. 912. See, e.g., Parker, 699 F.2d 177. Emerson's reliance upon York, 202 F.Supp. 275, is equally unavailing. There the defendant falsely listed the FBI as her place of employment on a retail credit application. The court found that she did not act "under the authority of the United States" in seeking to establish credit by misstating her employment status. Id. at 277. By contrast, Emerson was actively pretending to be acting under an FBI agent's authority by ordering Anderson to accompany him downtown. His command, which could be construed as an attempted arrest, is clearly distinguishable from the attempt to get personal credit without a showing of apparent authority. We find that neither Larson nor York is persuasive authority for requiring a reversal and dismissal in this case.
 
 
 12
 The defendant next argues that the FBI conducted an unreasonable search and seizure when agents obtained his passport and the FBI brochure from his parents. As the government notes, however, Emerson's motion to suppress was not timely filed under Fed. R. Crim. P. 12(b)(3) and the local rules in the Western District of Kentucky, W.D. Ky. R. 6(a)(3). Because the motion was filed late, without an explanation that would constitute good cause, we hold that the defendant waived this issue in the district court and that it is not reviewable on appeal, except for plain error. See Fed. R. Crim. P. 52(b). There is no such error apparent on this record.
 
 
 13
 Finally, the defendant claims that he was improperly convicted on the basis of hearsay, because the court permitted Anderson to testify that someone in the FBI office told him that Emerson was not an FBI agent. The defendant argues that this testimony concerning what Anderson was told was hearsay because it was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(d). The defendant contends that this testimony was admitted to show that the defendant's representation of himself as an agent was false. Moreover, he claims, the error in admitting the hearsay statement was prejudicial because it was the only evidence that the defendant was not an agent, and the only evidence that Anderson knew that he was not an agent.
 
 
 14
 Despite the government's insistence that this testimony by Anderson was not hearsay, we think that it was, because it was ostensibly offered to prove the truth of the matter asserted and no limiting instruction of any kind was given. We nevertheless hold that any error in its admission was harmless because, contrary to the defendant's insistence, Anderson's testimony was not the only proof that Emerson was not an FBI agent. Agent Craddock also testified that the defendant was not an FBI agent, and the government relied solely on Craddock's testimony in its argument to the jury. Moreover, although the defendant argued that Anderson's hearsay testimony was the only evidence of his knowledge of the impersonation, Anderson's knowledge was not an element of the offense and is, therefore, irrelevant.
 
 
 15
 For the reasons state above, we AFFIRM the district court's judgment.
 
 
 
 *
 The Hon. John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation