DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant Gary J. Haydon, a.k.a. J.W. Haydon, appeals from his convictions in the Summit County Court of Common Pleas of three counts of involuntary manslaughter, two counts of felonious assault, and one count of aggravated arson. This Court affirms.
In 1995 or 1996, Haydon and his family moved into a home located on Raasch Avenue in Akron, Ohio. Across a street in close proximity was a house located at 499 Bell Street, which was occupied by Elmer Lister, his wife Karen, the Listers' son Cody, Karen's daughter Krystal, and Charlotte Tanner, a nineteen-year-old woman who was a live-in babysitter.
When the Haydons initially moved into the neighborhood, they were on good terms with the Lister household. Both households were also on good terms with two teenage neighborhood boys, William Taylor and Isaac Mitchell. Taylor and Mitchell would often acquire marijuana for Haydon or for Elmer and Karen Lister and then smoke the marijuana with the party for whom it was purchased.
Sometime in late 1996, the relationship between the Haydons and the Listers began to deteriorate. Karen alleged that Haydon had made inappropriate advances toward her, and Haydon alleged that Karen had lied about some money that was in the possession of Haydon's wife. Soon thereafter, Karen and Haydon engaged in profanity-laced verbal battles. The relationship between the Listers and Taylor and Mitchell also broke down after a scuffle in which Taylor flipped Karen to the ground.
In July, August, or September 1997, Haydon began having discussions with Taylor and Mitchell about ways to drive the Listers from the neighborhood. Haydon offered to pay the pair for their services. The first suggestion was to vandalize the Listers' car, either by smashing in the windows or by setting the car on fire. It was later suggested that something be set on fire on the Listers' porch. At that time, Haydon rejected the idea because of the risk of someone being harmed in a fire.
Around September 15, 1997, Haydon and his wife went to the Listers' house to confront the Listers about an incident between the Haydon children and the Lister children on a school bus. Charlotte Tanner opened the door. After receiving verbal abuse from the Haydons, Charlotte told them to leave the property. Haydon then struck Charlotte. Soon thereafter, Charlotte and Karen visited the Akron City Prosecutor's Office to file a complaint against Haydon. It is unclear from the record before this Court whether criminal charges against Haydon resulted from the complaint.
After these events transpired, Haydon met with Taylor and Mitchell and told them, "Whatever you do, I don't care if you burn it to the ground, do what you got to do." Haydon gave Taylor and Mitchell money and marijuana as payment for what they were to do.
On September 27, 1997, at approximately 4:00 a.m., Taylor and Mitchell donned dark clothing and hid their faces behind masks. They then proceeded to the Lister house with a thermos filled with gasoline. One of them poured most of the gasoline on a sofa on the Listers' front porch and spread the remaining gasoline on the porch. The gasoline was lit, and the pair ran to Taylor's house.
At the house, Karen Lister was awakened by the sound of a barking dog. She woke up Elmer, who looked out the window of their second-story bedroom. He saw flames leaping from the front porch. Elmer and Karen gathered Cody, Krystal, and Charlotte and fled to a bathroom, also on the second floor. Elmer broke out a window, stepped onto the roof, and jumped to the ground. He shouted for the others to follow. He saw Karen hold Cody out of the window, then drop him onto the roof, where Elmer retrieved him. He did not see the other three again; Karen, Krystal, and Charlotte died of carbon monoxide poisoning as a result of the smoke from the fire.
After an investigation, Taylor, Mitchell, and Haydon were arrested for their involvement in the Lister house fire. Haydon was indicted on three counts of aggravated murder with capital specifications, two counts of attempted aggravated murder, and one count of aggravated arson. Haydon pleaded not guilty to the charges against him.
A jury trial was held over several days in April 1998. Among the witnesses for the prosecution were Taylor and Mitchell, who testified as part of separate plea bargains. After deliberating, the jury found Haydon not guilty of aggravated murder or attempted aggravated murder but found him guilty of three counts of the lesser included offense of involuntary manslaughter, two counts of the lesser included offense of felonious assault, and one count of aggravated arson. The trial court sentenced Haydon to an aggregate prison term of forty-four years.
Haydon timely appeals, asserting five assignments of error.
First Assignment of Error
 "The trial court erred by allowing the jury to consider hearsay testimony in violation of the appellant's right to confrontation."
In his first assignment of error, Haydon argues that the trial court erroneously admitted testimony from Elmer Lister that recited statements from Karen Lister. During the course of his testimony, Elmer stated that Karen told him that she was afraid of Haydon. An employee of the Akron City Prosecutor's Office also testified that Karen expressed fear of Haydon. Haydon objected to the testimony, and the trial court overruled the objection. Haydon contends that the testimony was impermissible hearsay. This Court disagrees.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Evid.R. 803(3) permits the admission of out-of-court statements by a declarant regarding "the declarant's then[-]existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.]" Statements by a victim that he or she is fearful of a party are admissible under the state of mind exception. State v. Apanovitch (1987),33 Ohio St.3d 19, 21, citing United States v. Cohen (C.A.5, 1980),631 F.2d 1223. "However, * * * the state-of-mind exception does not permit witnesses to relate any of the declarant's statements as to why he held a particular state of mind." Id.
The trial court did not abuse its discretion by admitting the testimony. The testimony of Elmer and of the employee of the prosecutor's office only stated that Karen was afraid of Haydon and did not relate any statements by Karen as to why she was fearful. The testimony at issue did not run afoul of Evid.R. 803(3).
Haydon argues that, because the testimony of those witnesses also contained reasons why Karen might express fear, the testimony was erroneously admitted. This argument misapprehends the scope of Evid.R. 803(3), which deals exclusively with hearsay. A statement such as "The victim said she was afraid of X because he threatened her" is inadmissible. However, the rule does not disallow testimony that would contain both "The victim said that she was afraid of X" and "I heard X threaten the victim," because the latter testimony is not a statement by the victim as to why she was afraid of X. The trial court did not abuse its discretion by admitting such testimony in this case. The first assignment of error is overruled.
Second Assignment of Error
 "The trial court erred by allowing prejudicial other acts evidence to be introduced to the jury."
Haydon argues in his second assignment of error that the trial court erroneously admitted testimony of other "bad acts." Specifically, Haydon takes issue with (1) testimony by Elmer that Haydon struck Charlotte Tanner, (2) testimony by a neighbor about an incident between the neighbor and Haydon that led to the deterioration of their previously friendly relationship, and (3) testimony by the same neighbor that on one occasion Haydon ran someone off of his porch with a small baseball bat. He contends that this testimony was inadmissible under Evid.R. 404(B) and R.C.2945.59. This Court disagrees.
Evid.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Accord R.C. 2945.59. The testimony regarding Haydon's assault on Charlotte Tanner was admissible as proof of Haydon's motive for hiring Taylor and Mitchell to set fire to the Lister house. After Haydon struck Charlotte, she and Karen filed the complaint with the prosecutor's office. Another neighbor testified at trial that, shortly after the complaint was filed, Haydon told her that Karen "would not make it to trial because she would burn in hell first."
With respect to the statement about an altercation with a neighbor, the record reveals that Haydon objected to the neighbor's statement and that the trial court instructed the jury to disregard the statement. A jury is presumed to follow the instructions given by the trial court. State v. Garner (1995),74 Ohio St.3d 49, 59. Haydon has not claimed that the jury did not follow the trial court's instruction on this matter. Because the objection was sustained, Haydon suffered no prejudice.
As to the neighbor's other statement, involving Haydon chasing an unidentified person from his (Haydon's) porch, Haydon did not object to the testimony. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. In order for this Court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995), 108 Ohio App.3d 477, 482.
This Court cannot say that the outcome of the trial would have been different but for the admission of that short fragment of testimony. As such, no plain error occurred. The trial court did not abuse its discretion when it admitted the "other acts" testimony complained of by Haydon. Accordingly, the second assignment of error is overruled.
Third Assignment of Error
 "The evidence is insufficient to sustain the convictions of felonious assault."
Haydon was tried on two counts of attempted aggravated murder with respect to Elmer and Cody. However, he was instead convicted of two counts of felonious assault, which were presented to the jury as lesser included offenses. Haydon argues that the evidence was insufficient to convict him of felonious assault. Specifically, he asserts that there was no evidence that he knowingly attempted to harm anyone. This argument is not well taken.
"The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Statev. Leggett (Oct. 29, 1997), Summit App. No. 18303, unreported, at 3-4. This Court must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. at 4. "In essence, sufficiency is a test of adequacy." State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
Haydon was convicted of felonious assault, premised on a theory of complicity. R.C. 2903.11(A)(2) states: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code." R.C.2923.03(A)(1), dealing with complicity, reads in relevant part: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [s]olicit or procure another to commit the offense[.]" A charge of complicity may be stated in terms of the principal offense. R.C. 2923.03(F). Therefore, Haydon was properly convicted of complicity to commit felonious assault if there was evidence that Haydon had knowingly procured Taylor and Mitchell to cause or attempt to cause physical harm to Elmer and Cody by the means stated in the statute.
Haydon contends that there is no evidence that he acted with an intent to harm Elmer or Cody, or, in other words, that he acted knowingly. R.C. 2901.22(B) defines knowing conduct: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Whether a defendant "knowingly" committed an act is determined from the manner in which the act is done, the means used to commit the act, and all other facts and circumstances in evidence. State v.Hardin (1984), 16 Ohio App.3d 243, 245, citing State v. Huffman
(1936), 131 Ohio St. 27, paragraph four of the syllabus.
This Court concludes that there was sufficient evidence that Haydon acted knowingly. Mitchell testified that Haydon said, "Whatever you do, I don't care if you burn it to the ground, do what you got to do," shortly after Haydon had initially abandoned the idea of burning the sofa on the porch because of a concern that someone might be harmed. Haydon also told a neighbor that Karen would "burn in hell" before any trial stemming from his assault on Charlotte. Even though Haydon did not direct the means of setting the fire, he paid Taylor and Mitchell to set the fire, knowing that it was very likely that injury might result. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to support Haydon's convictions for felonious assault. The third assignment of error is overruled.
Fourth Assignment of Error
 "The failure of trial counsel to make proper objections constitutes ineffective assistance of counsel."
Haydon next argues that his attorneys[1] were deficient on several occasions during his trial, depriving him of his right to effective assistance of counsel. He contends that their failure to interpose objections to certain evidence prejudiced his defense. This Court disagrees.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693. In demonstrating prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98,100.
Haydon contends that his trial attorneys were ineffective when they failed to object to: (1) testimony by Elmer that Charlotte had told him that Haydon had struck her in the face; (2) testimony by Elmer that Charlotte and Karen went to the prosecutor's office to file a complaint against Haydon for striking Charlotte; (3) the admission of portrait-quality photographs of Karen, Krystal, and Charlotte as "victim impact" evidence; (4) the statements of the neighbor mentioned in the second assignment of error; (5) testimony by the same neighbor that Karen was afraid of Haydon; (6) testimony by the same neighbor that, after the fire at the Lister house, Haydon told that neighbor and another neighbor that their houses could be next; and (7) testimony by another neighbor that Karen had said that Haydon had damaged the Listers' front door. These seven alleged errors by trial counsel shall be addressed in turn.
First, the failure to object to Charlotte's statement to Elmer was not erroneous. Elmer testified that Charlotte told him of the assault shortly after it had occurred and that Charlotte was crying hysterically at the time. This evidence was admissible under the excited utterance exception. See Evid.R. 803(2). Also, the testimony that Karen was afraid of Haydon (the fifth alleged error by counsel) was admissible under Evid.R. 803(3) as a statement of her state of mind.
This Court finds that there was no prejudice to Haydon with respect to the third and seventh alleged errors by counsel. It cannot be said that, but for these alleged errors (the photographs and hearsay testimony that Haydon damaged the Listers' front door), there was a reasonable probability that Haydon would have been acquitted.
The fourth alleged error by counsel was the failure to object to statements by a neighbor about an incident between himself and Haydon and the failure to object to a statement that Haydon chased someone off his porch with a small baseball bat. As to the first part, this Court noted above that the trial court sustained an objection to this testimony. Because counsel did in fact object, there was no error by counsel. With respect to the second statement, this Court cannot say that, but for that testimony, there was a reasonable probability that Haydon would have been acquitted.
As to the second and sixth alleged errors by counsel, Haydon has not shown why trial counsel should have objected to those portions of testimony, thereby failing to demonstrate how he was prejudiced by counsel's failure to object. Without a showing of prejudice, this Court must conclude that Haydon's attorneys did not render ineffective assistance of counsel in those respects.
In sum, Haydon's trial attorneys did not render ineffective assistance of counsel. Accordingly, the fourth assignment of error is overruled.
Fifth Assignment of Error
"The verdicts are against the weight of the evidence."
In his fifth and final assignment of error, Haydon contends that his convictions for involuntary manslaughter, felonious assault, and aggravated arson are against the manifest weight of the evidence. This Court disagrees.
When a defendant asserts that a conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4.
Haydon was convicted of complicity to commit involuntary manslaughter, felonious assault, and aggravated arson. The elements of felonious assault and complicity were discussed in the third assignment of error. R.C. 2903.04(A), dealing with involuntary manslaughter, states: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Aggravated arson, as charged in this case, is set forth in R.C. 2909.02(A)(1): "No person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]" A violation of R.C. 2909.02(A)(1) is a first-degree felony. R.C. 2909.02(B)(2).
In its case in chief, the prosecution presented the testimony of several neighbors of Haydon and the Listers who had witnessed verbal altercations between those parties and had heard specific threats by Haydon against Karen Lister. Taylor and Mitchell testified that Haydon had offered them money and marijuana to set fire to the sofa on the Listers' front porch.
Haydon presented the testimony of six people who knew Taylor and Mitchell. These people testified that Taylor had a predilection for starting fires and that he had told them that he was setting Haydon up so that he and Mitchell would not go down alone. The prosecution's cross-examination of those witnesses and the presentation of rebuttal witnesses undercut the credibility of Haydon's witnesses. There was never any explanation as to why Taylor and Mitchell would choose to incriminate Haydon when there was no testimony as to any animosity among the three.
Having reviewed the record in full, this Court finds that this appeal does not present extraordinary circumstances requiring the reversal of the jury verdicts as being against the manifest weight of the evidence. While some testimony was divergent, the overall account was consistent in demonstrating that Haydon had procured Taylor and Mitchell to set fire to the Listers' front porch sofa. That fire caused a substantial risk of serious physical harm to the five people inside the Lister house and in fact was the proximate cause of the deaths of Karen, Krystal, and Charlotte. The fire was also an attempt to cause physical harm to Elmer and Cody. The evidence demonstrates that Haydon had secured the services of Taylor and Mitchell knowing the consequences that were likely to follow. The evidence does not weigh heavily in favor of Haydon, and this Court cannot say that the jury clearly lost its way in resolving conflicts in the testimony. As such, Haydon's fifth assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR FOR THE COURT
WHITMORE, J. and BATCHELDER, J. CONCUR
[1] Because the aggravated murder charges against Haydon were accompanied by death penalty specifications, Haydon was represented by two attorneys, both of whom were death-penalty certified by the Ohio Public Defender.