REVISED, MARCH 14, 2000

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-30978

REXFORD KIPPS,
CAROL KIPPS AND KYLE KIPPS,

Plaintiffs-Appellants,

versus

JAMES CAILLIER, RAY AUTHEMENT,
NELSON J. SCHEXNAYDER, JR. AND NELSON STOKLEY,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

February 25, 2000

**ORDER DENYING REHEARING EN BANC**

Before WIENER, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Plaintiffs petition the Court for a *en banc* rehearing of our panel opinion at 197 F.3d 765 (5th Cir. 1999). Because we find that plaintiffs raise no arguments that were not adequately considered in the panel opinion, their petition for rehearing *en banc* is denied.

An issue was raised with respect to the panel majority's qualified immunity analysis. Specifically, whether a court could

assume *arguendo* the first prong of the analysis--the existence of a constitutionally protected right.[1]  Fifth Circuit case law appears to require a court to first answer whether an existing constitutional right has been asserted by a party.  *See, e.g.*, *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999) ("We may not pretermit that first prong but must decide whether Evans has alleged *any* constitutional violation before we may move to the inquiries under the second prong.") (citing *Quives v. Campbell*, 934 F.2d 668, 670 (5th Cir. 1991)).  Without resolving the question of whether Supreme Court and Fifth Circuit precedent require rigid application of *Evans* to all qualified immunity situations, we have little trouble finding that a constitutional interest in familial association does, in fact, exist and was clearly established at the time Kipps was fired.

**Existence of a Liberty Interest in Familial Association**

According to Supreme Court precedent, the Constitution accords special protection to two different types of association, "intimate association" and "expressive association."  *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *see also Louisiana Debating and Literary Assoc. v. City of New Orleans*, 42 F.3d 1483, 1493-94 (5th Cir. 1995).  In *Roberts*, the Court noted that the right to intimate association, the freedom to choose "to

---

[1]  *See, e.g.*, *Kipps v. Callier*, 197 F.3d 765, 768-69 (5th Cir. 1999) ("Assuming *arguendo* that defendants violated Kipps's constitutional liberty interest in familial association, the resolution of this issue turns on whether the defendants' actions were 'objectively reasonable.'").

enter into and maintain certain intimate human relationships," is a "fundamental element of personal liberty." 468 U.S. at 617-18. At the foundation of this right to intimate association are family relationships:

> Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, *only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty*.

*Roberts*, 468 U.S. at 619-20 (emphasis added); *see also McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) ("*At a minimum*, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family.") (emphasis added). Supreme Court precedent with respect to intimate association can be synthesized as a continuum with "family relationships" at one end, receiving the most protection, and arms length relationships, like a business acquaintance, at the other end, "remote from the concerns giving rise to this constitutional protection." *Roberts*, 468 U.S. at 620.

Defendants assert that in order to have an actionable claim based on familial association there must be a permanent and involuntary separation between parent and child. In other words, before a party can bring a cognizable claim based on interference

-3-

with familial association, that relationship at issue must be totally destroyed.  Notwithstanding the questionable validity of this position, defendants' argument misunderstands the nature of plaintiffs' alleged constitutional injury.  Kipps claims that he was fired because of his actual association with his son.[2] *See* (Complaint ¶ 16).  This is separate and distinct from a claim of state interference with  that association.

The importance of the family has been discussed in numerous cases.  *See, e.g., Lehr v. Robertson*, 463 U.S. 248, 258 (1983) ("[T]he relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'") (quoting *Kovacs v. Cooper*, 336 U.S. 77, 95 (1949) (Frankfurter, J., concurring)); *see also Tyson v. New York City Hous. Auth.*, 369 F. Supp. 513, 520 (S.D.N.Y. 1974) (holding that public housing tenants had a cause of action under the right of association when they were threatened with eviction because of acts committed by their adult children who did not live with them).

---

[2]  The special concurrence focuses on Kyle Kipps's age as if it makes a difference in the analysis of the issues in this case. If anything, the fact that Kipps could not legally force his son to attend USL, supports the inference that Kipps was fired merely for his association with Kyle.

Although it is clear that "family relationships" are subject to constitutional protection,[3] the definitional boundaries that limit the types of associations that constitute "family relationships" are blurred. The case *subjudice*, however, does not deal with an association on the fringe of the definition for "family relationships." Indeed, the parent-child relationship lies at the heart of protected familial associations. *See, e.g.*, *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999) ("The constitutional right to family integrity was well established in 1992."). Our recognition of Kipps's constitutional right[4] to familial association with his son (i.e, his right to preserve the integrity of that family relationship) does not take us to the limits that may be imposed on constitutionally protected family relationships.

Kipps's association with his son deserves at least the same

_____

[3] *Laurenzo v. Mississippi High Sch. Activities Ass'n*, 662 F.2d 1117, 1119 (5th Cir. 1981) ("The constitutional right generally protecting the family has been recognized for nearly three score years by the Supreme Court.").

[4] The assertion in the special concurrence that "the Kippses have not alleged violation of a clearly established right" misses the point. Mrs. Kipps and Kyle are unable to bring a constitutional claim under these circumstances. Only Rexford Kipps can properly claim a violation of his right to familial association. This explains the use of a singular possessive modifier in the opinion: Kipps's.

protection as association with members of a union, *see Boddie v. City of Columbus*, 989 F.2d 745, 750 (5th Cir. 1993)("We conclude that Chief Gale should reasonably have known that firing Boddie for his association with union firemen violated clearly established law."). Plaintiffs' claim that Kipps was terminated because his son chose to play football for LSU alleges the impingement of a cognizable constitutionally protected interest.

## Objective Reasonableness of Defendants

Although we find that Kipps had a clearly established, constitutionally protected right to familial association with his son, we continue to hold that the defendants' actions were, under the unique facts of this case, objectively reasonable.[5] *See Kipps*, 197 F.3d at 768-70. Therefore, defendants are entitled to qualified immunity for their actions.

## Conclusion

Treating the Petition for Rehearing *En Banc* as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc, *see* FED. R. APP. P. 35; 5TH CIR. R. 35, the Petition for Rehearing *En Banc* is DENIED.

Judge Wiener and Judge Parker concur in the entirety of this

---

[5] Judge DeMoss clearly places no great emphasis on the role recruiting plays in an athletic program. Perhaps his position is influenced by his distinguished tenure at Rice Institute, an institution whose academic repute greatly overshadows its athletic record. We can only point him to the affidavit testimony of Spike Dykes.

order.  Judge DeMoss concurs specially.

DeMOSS, Circuit Judge, concurring in the denial of rehearing only:

On December 6, 1999, when the majority filed its original opinion in this case, it acknowledged that:

Whether a constitutional liberty interest is implicated by the facts of this case is highly questionable.

*Kipps v. Caillier*, 197 F.3d 765, 769 n. 4 (5th Cir. 1999).  Now, less than 90 days later and without citation to any relevant intervening decision, the majority jumps to the following conclusion:

We have little trouble finding that a constitutional interest in familial association does, in fact, exist and was clearly established at the time Kipps was fired.

Majority Opinion, at 2.  This 180/ turnabout permits the majority to at least superficially comply with our precedent requiring that it first address the first prong of the qualified immunity analysis, by finding that the Kippses' alleged a violation of a clearly established constitutional right, but then in the end, return to the actual holding of the original opinion that:

The defendants are entitled to qualified immunity because their conduct was objectively reasonable.

There are several serious problems with the majority's analysis of the first prong of the qualified immunity inquiry in this case.  First, the majority spills a lot of ink driving home the importance of the family.  I wholeheartedly agree that family relationships are important.  I even agree that the United States Constitution affords parents certain protections from

unreasonable state interference in decisions regarding the care, custody, training, and education of their children.  I do not agree, however, that the Constitution may be invoked to remedy every stupid, irrational, or unreasonable decision taken by a state official, regardless of whether there is actually any tangible interference in the family/parental relationship.  The majority apparently disagrees, stating that:

> Kipps was fired because of his actual association with his son.  This is separate and distinct from a claim of state interference with that association.

I can find no logical or jurisprudential support for the existence of a constitutional right of association that is so easily divorced from state interference with that right.

The majority's stated objective in making this questionable distinction is nothing more than an attempt to avoid the defendants' argument that the level of state interference must be such that the facts state a claim of constitutional magnitude.  Majority Opinion at 4.  I find the majority's cursory rejection of this argument unpersuasive, and therefore register my disagreement with the majority's view that some tangible level of state interference is not required to state a constitutional claim for violation of the plaintiffs' associational rights.

Having established that there is a clearly established right to familial association that is separate and apart from the right to be free from state interference with familial relationships, the majority next remarks that the facts in this case actually fall in the heartland, rather than "on the fringe," of the jurisprudence addressing the constitutional right to familial

integrity.  The majority's conclusion in this regard is supported by nothing more than the assumption that the case involves a parent/child relationship.  Majority Opinion at 5-6.  I could not disagree more.  At all times relevant to the actions in controversy in this suit, Kyle Kipps was over the age of 18, and under Louisiana law, his parents could no longer tell him where he had to go to school.  There is no dispute whatsoever about the fact that Kyle Kipps himself, rather than his parents, made the decision to go to school at LSU and play football there.  There is no dispute that Kyle had full and ample opportunity to discuss with his parents the choices and alternatives he had about going to college and playing football.  Furthermore, there is no allegation that any of the defendants' conduct caused any breach or separation of the love and affection existing between the Kippses and their adult son.  There are, therefore, no facts tending to establish any actual interference with the Kippses' familial relationships.  I conclude that the Kippses have not alleged a clearly established right which some conduct of the defendants violated.

To the extent the majority concludes otherwise, I believe they are conflating the issues of whether a constitutional right exists in the abstract, and whether that right is implicated on the facts alleged by the plaintiffs.  The majority assumes that the mere existence in the abstract of some clearly established constitutional right, in this case the right to "actual" familial association, is sufficient to defeat a claim of qualified

immunity.  But that is not the law.  We have consistently required more than that the plaintiffs be able to name or invoke some clearly established constitutional right.  A defendants' properly invoked claim of qualified immunity cannot be defeated absent factual allegations which, if accepted as true, at least potentially state a claim for violation of that right.  *See, e.g.*, **Shipp v. McMahon**, 199 F.3d 256, 262 (5th Cir. 2000); **Petta v. Rivera**, 143 F.3d 895, 899 (5th Cir. 1998); **Cantu v. Rocha**, 77 F.3d 795, 805-08 (5th Cir. 1996).  For that reason, the relevant issue is not whether there might, in an appropriate case, be some constitutionally impermissible measure of intrusion into the familial relationship.  The question is whether the Kippses' factual allegations even potentially set forth a claim for an intrusion of constitutional magnitude in this case.   For the reasons stated, I do not believe the mere existence of a parent/child relationship between the Kippses and their son is sufficient to state a cause of action for such an intrusion.[6]  I would therefore base the decision in this case upon the Kippses' failure to state the violation of a constitutional claim, rather than on the patently ridiculous premise that the head coach's

---

[6]    The majority claims I have "missed the point" by failing to realize that only Rexford Kipps alleged a violation of his right to familial association.  I beg to differ.  There are three plaintiffs in this case and all of the allegations relating to the plaintiffs' familial association rights are consistently framed in terms of all three plaintiffs or all three complainants. *See, e.g.*, Complaint ¶ 15 ("the defendants' actions impermissibly infringe upon complainants' right to make intimate, personal decisions regarding their familial relationships"); *Id*. at ¶ 16 (defendants "violated complainants' right to association as guaranteed by the First, Third, Fourth, and Fifth Amendments to the United States Constitution, and Rexford `Rex' Kipps' right to due process under the Fourteenth Amendment to the United States Constitution").  That being the case, I am frankly baffled by the majority's comment that only Rexford Kipps is raising the claim.

decision to fire Kyle's father because Kyle decided to attend LSU was objectively reasonable.