# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 6, 2012

Lyle W. Cayce
Clerk

No. 11-30814

APRIL NICOLE BEDINGFIELD, as mother & nature tutrix, on behalf of
Elizabeth Macy Bedingfield; ELIZABETH BEDINGFIELD, as executrix, on
behalf of Jimmy Elton Bedingfield, II, Succession,

Plaintiff–Appellants

v.

LARRY C. DEEN, in his capacity as Sheriff of Bossier Parish; MARK
TOLOSO, in his capacity as Warden, Deputy Sheriff or Officer of the Bossier
Parish Correctional Facility; JERRY SIMMS, in his capacity as Deputy
Sheriff, Assistant Warden or an Officer of the Bossier Parish Correctional
Facility; SAINT PAUL FIRE AND MARINE INSURANCE COMPANY,

Defendants–Appellees

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CV-369

Before KING, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Jimmy "Trey" Bedingfield was diagnosed with terminal colon cancer while
incarcerated at the Bossier Parish Sheriff's Office Work Release Facility, and he
died three months after his diagnosis. Plaintiffs–Appellants Elizabeth Macy

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30814

Bedingfield, Trey's minor daughter (through her mother April Bedingfield), and Mrs. Elizabeth Bedingfield and Mr. Jimmy Elton Bedingfield, Trey's parents, brought this civil action for monetary damages against Defendants–Appellees Bossier Parish Sheriff Larry Deen, Warden Mark Toloso, Assistant Warden Lieutenant Jerry Sims, and St. Paul Fire and Marine Insurance Company. Plaintiffs asserted a variety of claims, including claims under both federal and state law that Defendants failed to provide reasonable medical care to Trey. The district court granted summary judgment in favor of Defendants and dismissed all of Plaintiffs' claims. Plaintiffs appeal the district court's judgment and several of the court's evidentiary and discovery rulings. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*A. Statement of Facts*

Jimmy "Trey" Bedingfield ("Trey") was convicted of felony theft, and on November 27, 2007, he was sentenced to serve five years in jail, with three years suspended and with credit for time served. On January 18, 2008, Trey was accepted into the Bossier Parish Sheriff's Office Work Release Facility ("Work Release Facility"). On January 21, 2008, Trey began working as a freight puller for Hardware Resources. Trey's last day of employment was May 23, 2008. While he was employed, Trey only missed five days of work due to illness.

On March 2, 2008, Trey complained of nausea, vomiting, diarrhea, weakness, and jaundice, and he saw a paramedic at the Work Release Facility. Trey was referred to LSU Hospital, where he was evaluated by physicians. On March 4, Trey returned to the Work Release Facility with a discharge summary report from LSU Hospital that stated that an esophagogastroduodenoscopy ("EGD" or "endoscopy") procedure was scheduled for March 13. The report also stated that Trey should not take any "aspirin-type products including Pepto-Bismol, nonsteroidal anti-inflammatory medications, as well as BC Powders"

2

No. 11-30814

and that Trey would meet with a physician on March 20 to review the results of the procedure. On March 5, Registered Nurse David Gorman ("Nurse Gorman"), an employee of the Bossier Parish Sheriff's Office, made arrangements for jail personnel to take Trey to the endoscopy procedure on March 13.

On March 9, Trey submitted a "kite communication form" to Assistant Warden Lieutenant Jerry Sims ("Assistant Warden Sims"). The form indicated that Trey was refusing the EGD procedure. Trey wrote on the form:

> Lt. Simms I'm suppose[d] to go back to the Hospital on the 13th and have a scope ran down in my stomach to check for ulcers. It[']s not a life threatening deal or anything. I have medical insurance threw [sic] Willis Knighton and my own doctor I've had for years. I get out Aug 8th this year, I would rather him do this when I get out. I would like to turn down going back to the hospital if that[']s ok. I feel fine since I've been back. Thank you.

On March 10, Trey also signed a "refusal of medical treatment form." The form indicated that Trey refused the "M.D. Appointment" and "Medical Treatments" "scheduled or ordered for [him] by the medical staff." Trey signed his name underneath the following typed paragraph on the form:

> I am signing this on my own free will without any coercion. I was informed of the consequences of refusal, which may directly affect my medical condition. I accept those consequences and release Bossier Sheriff's Department, Bossier Parish Police Jury, and/or medical staff of all legal ramifications concerning this matter.

In his affidavit, Nurse Gorman stated that he had talked to Trey about the EGD procedure and that Trey told him that "he did not want to attend the procedure."

On March 19, Trey complained of stomach cramps and of vomiting "clear water," and he was seen by Nurse Gorman. Nurse Gorman, who stated that he was unaware of LSU Hospital's orders to the contrary, gave Trey several Pepto Bismol tablets. Nurse Gorman advised Trey to report any further problems, and Nurse Gorman told Assistant Warden Sims that, if Trey reported any additional

3

No. 11-30814

problems, he should be sent to LSU Hospital. Trey did not report any additional problems that night, but missed work the next day due to illness.

Trey next reported a medical problem on May 6, 2008, and he saw Nurse Gorman regarding chest pain. Nurse Gorman performed an EKG and drew blood that was sent to LSU Hospital for evaluation. Nurse Gorman also scheduled Trey to see Dr. Russell Roberts ("Dr. Roberts") on May 9, which was the date of Dr. Roberts's next visit to the Work Release Facility. On May 9, Dr. Roberts examined Trey and evaluated the May 6 blood work and EKG. Dr. Roberts scheduled a follow-up appointment for Trey a month later, at which time additional blood work would be compared with the May 6 blood work.

On May 27, 2008, Trey complained of abdominal pain, and he saw Nurse Gorman. According to Nurse Gorman, Trey "indicated for the first time . . . that he had experienced weight loss." Nurse Gorman immediately sent Trey to LSU Hospital for evaluation. On May 27, Trey was diagnosed with colon cancer that had metastasized to other organs, including his liver. According to Warden Mark Toloso ("Warden Toloso"), on Saturday, May 31, LSU Hospital told him of Trey's terminal illness and requested permission for Trey to have visitors at LSU Hospital.[1] Warden Toloso stated that he granted permission for visitation that same day. Trey's family visited him daily at LSU Hospital starting on or about June 1, 2008. Trey was discharged from LSU Hospital to hospice care on June 28, 2008. He passed away due to the cancer on September 3, 2008.

In addition to the medical problems outlined above, Plaintiffs assert that Trey experienced more medical issues but did not report them because of threats made by Warden Toloso. Plaintiffs state that the intimidation began on February 11, 2008, when Warden Toloso chastised Trey for missing work due to a back injury. According to Plaintiffs, Trey told his family and friends (over the

---

[1] LSU Hospital is not a secure facility, so visitation is not permitted while an inmate is receiving treatment, unless the inmate has a terminal illness.

No. 11-30814

telephone and through letters) that he did not report his medical problems because he did not want to be removed from the Work Release Facility and be placed back in the general prison population.

*B. Statement of Proceedings*

On March 9, 2009, Plaintiffs–Appellants Elizabeth Macy Bedingfield, Trey's minor daughter (through her mother and natural tutrix April Bedingfield),[2] and Mrs. Elizabeth Bedingfield and Mr. Jimmy Elton Bedingfield, Trey's parents,[3] brought this civil action for monetary damages against Defendants–Appellees Bossier Parish Sheriff Larry Deen ("Sheriff Deen"), Warden Toloso, Assistant Warden Sims, and St. Paul Fire and Marine Insurance Company. Plaintiffs filed their complaint in the United States District Court for the Western District of Louisiana. Plaintiffs alleged that Defendants failed to provide reasonable and timely medical care to Trey. In Trey's wrongful death and survival actions, Elizabeth Macy Bedingfield asserted claims under 42 U.S.C. § 1983 for (1) the denial of adequate medical care in violation of Trey's Eighth Amendment rights and (2) the denial of visitation in violation of his First Amendment rights. She also asserted Louisiana state-law negligence claims alleging a denial of reasonable medical care. Trey's parents asserted a claim under § 1983 for the denial of familial association with Trey in violation of their First and Fourteenth Amendment rights. They also asserted loss of consortium claims, bystander claims, and subrogation claims to recover funeral expenses.

On October 19, 2010, the magistrate judge granted Sheriff Deen's request for a protective order prohibiting Plaintiffs from taking his deposition. The

---

[2] Elizabeth Macy Bedingfield, Trey's surviving child, possesses the sole right to pursue Trey's wrongful death and survival actions. April Bedingfield, Trey's ex-wife, is only acting on behalf of her minor daughter in this lawsuit.

[3] Mr. Jimmy Elton Bedingfield, Trey's father, passed away on February 8, 2011. On April 27, 2011, the district court ordered that Mrs. Elizabeth Bedingfield, the surviving spouse and named executrix of his estate, be substituted as plaintiff for the decedent.

magistrate judge reasoned that "[t]here is no allegation in the Complaint that the Sheriff knew Trey or personally participated in any decisions regarding Trey's incarceration or medical treatment." The magistrate judge stated, however, that "[i]f Plaintiffs learn through other depositions or discovery that the Sheriff has unique personal knowledge relevant to the issues in this case, then Plaintiffs should re-urge the matter with the court." On February 22, 2011, Plaintiffs filed a motion to take the deposition of Sheriff Deen, arguing that "Sheriff Deen, because of his position and authority, possesses knowledge and information that is vital to their case." The magistrate judge denied this motion, reasoning that Plaintiffs did not demonstrate how Sheriff Deen's position provided him with "unique personal knowledge about the facts of this case." The district court affirmed the magistrate judge's order.

On February 11, 2011, Defendants filed a motion for summary judgment, seeking the dismissal of all of Plaintiffs' claims. Defendants' summary judgment evidence included the LSU Hospital discharge summary report, the kite communication form, the refusal of medical treatment form, Trey's medical records, and the affidavits of Warden Toloso, Assistant Warden Sims, Dr. Roberts, and Nurse Gorman. Warden Toloso stated in his affidavit that he was aware that Trey had elected to delay the endoscopy procedure, but "was not aware that [Trey] had any serious medical problem." He further stated that "[w]orkers are not penalized by the Sheriff's Office for requesting or receiving medical treatment." Assistant Warden Sims similarly stated in his affidavit that he was not aware that Trey had any serious medical needs. Defendants also included the expert report of Dr. Alan B. Grosbach ("Dr. Grosbach") regarding causation. Dr. Grosbach opined that, based on "the well-established slow growth rate of colon cancer," it is "more likely than not [that Trey's] cancer was not only present but already widely metastatic at the time of his March hospitalization."

No. 11-30814

Dr. Grosbach concluded that Trey's "cancer would still have been incurable had it been diagnosed in March."

On March 25, 2011, Plaintiffs filed a motion in opposition to Defendants' motion for summary judgment. Plaintiffs argued that Defendants' deliberate indifference to Trey's medical needs led to Trey's cancer not being diagnosed in a timely manner. Plaintiffs' summary judgment evidence included the affidavit and deposition testimony of Mrs. Elizabeth Bedingfield and the deposition testimony of Brent Weir, a family friend. Plaintiffs also attached the affidavit of Dr. Neilan Prather ("Dr. Prather"). Dr. Prather, who was board certified in internal medicine, was Trey's physician prior to his incarceration in 2007. Based on his review of Trey's 2008 medical records, Dr. Prather concluded that "the delay in diagnosis and appropriate treatment of Trey Bedingfield's cancer of approximately two months was, more probable than not, a substantial contributing factor in worsening [his] prognosis and subsequent failure to respond to treatment (chemotherapy) thereby significantly worsening his outcome as defined by survival time and quality of life."

On April 18, 2011, Defendants filed a motion to strike the affidavit of Dr. Prather, arguing that his opinions should have been disclosed earlier pursuant to Federal Rule of Civil Procedure 26. On May 6, Defendants filed a *Daubert* motion to exclude Dr. Prather's testimony. On June 16, during a status conference, the district court orally granted Defendants' motion to strike the affidavit of Dr. Prather. The district court reasoned that Dr. Prather was not Trey's treating physician, but rather he was an expert whose forensic opinions should have been, and were not, disclosed months earlier pursuant to Rule 26. The court then mooted Defendants' *Daubert* motion. Plaintiffs filed a motion for reconsideration of the court's two rulings, arguing that "they believed in good faith that Dr. Prather was [Trey's] treating physician" and that the rulings were "a significant penalty." The district court denied Plaintiffs' motion.

No. 11-30814

On May 9, 2011, Defendants filed a motion for a protective order prohibiting Plaintiffs from issuing discovery subpoenas after the March 15 discovery deadline set by the scheduling order. Defendants stated that on May 5, after the discovery deadline, they received a copy of Plaintiffs' subpoena to City-Tel Coin, Inc. ("City-Tel") that sought to obtain telephone records and recordings of Trey's conversations with his family and friends while he was incarcerated at the Work Release Facility. On May 23, the magistrate judge granted Defendants' motion and quashed Plaintiffs' subpoena to City-Tel. The magistrate judge explained that "Plaintiffs may not make an end-run around the discovery deadline by issuing subpoenas to a third party" and that "Plaintiffs' justifications for the untimely subpoena are unavailing."

On June 2, 2011, Plaintiffs filed a motion in limine to strike the affidavit and testimony of Dr. Grosbach, arguing that Dr. Grosbach's expert medical opinions had "no basis in fact or science." The district court denied Plaintiffs' motion. The court reasoned that the motion in limine was, "in actuality, a veiled *Daubert* motion" and that Plaintiffs had filed the motion after the May 6 deadline for *Daubert* motions set by the scheduling order. The court noted that Plaintiffs failed to offer a good faith explanation for missing the deadline and concluded that it would "not entertain Plaintiffs' untimely *Daubert* challenge."

On July 27, 2011, the district court issued a comprehensive, thirty-five page Memorandum Ruling granting Defendants' motion for summary judgment. The court first addressed the admissibility of Plaintiffs' evidence regarding Warden Toloso's alleged intimidation of Trey. Plaintiffs' evidence consisted of alleged statements made by Trey to his family and friends regarding this intimidation, as set forth in the affidavit and deposition testimony of Mrs. Elizabeth Bedingfield and Brent Weir. The defendants objected to this evidence as inadmissible hearsay. The district court noted that "Plaintiffs make the conclusory assertion that these statements . . . are admissible under Federal

8

Rules of Evidence 803, 804, and 807," but "supply little or no analysis." In a thorough analysis, the court determined that the challenged evidence was not admissible under (1) Rule 803(3), the state of mind exception, (2) Rule 804(b)(2), the dying declaration exception, and (3) Rule 807, the residual exception. The court excluded Plaintiffs' evidence as inadmissible hearsay.

The district court next addressed Plaintiffs' § 1983 claims that Defendants were deliberately indifferent to Trey's serious medical needs in violation of the Eighth Amendment. Plaintiffs made two arguments in support of their claims: (1) that Warden Toloso intentionally threatened Trey, causing him to forgo medical treatment; and (2) that Warden Toloso and Assistant Warden Sims knew that Trey's medical condition was serious but allowed him to forgo the scheduled EGD procedure. The court rejected Plaintiffs' first argument because the court had determined that Plaintiffs' sole evidence in support of this argument was inadmissible hearsay. With regard to the second argument, the court addressed Plaintiffs' contention that Trey posed a medical question in his kite communication form that was ignored by Assistant Warden Sims. Plaintiffs pointed to Trey's statement that he "would like to turn down going back to the hospital if that[']s ok" and argued that the "if that[']s ok" language asked Assistant Warden Sims if it was safe for him to decline the EGD procedure. The court determined that, even if the language could be interpreted as posing a medical question, "there is no summary judgment evidence to support that Assistant Warden Sims was deliberately indifferent in not interpreting the document as a request for his medical opinion." The court concluded that the summary judgment evidence indicated that Trey saw medical personnel each time he reported a problem and that Warden Toloso and Assistant Warden Sims were not aware that Trey had any serious medical condition. The court held that

there was no deliberate indifference and granted summary judgment to Defendants on Plaintiffs' § 1983 Eighth Amendment claims.[4]

The district court then granted summary judgment in favor of Defendants on Plaintiffs' Louisiana state-law claims for the denial of reasonable medical care. The court reasoned that the summary judgment evidence indicated that Trey saw medical personnel each time he requested treatment and thus that the care provided was reasonable. Furthermore, the court held that Plaintiffs' § 1983 and state-law claims relating to the denial of medical care failed for lack of evidence on causation. The court explained that Dr. Grosbach's expert opinion that Trey's cancer was terminal in March 2008 was "not challenged by any competent summary judgment evidence" by Plaintiffs, because the court had granted Defendants' motion to strike the affidavit of Dr. Prather.

The court then granted summary judgment to Defendants on Plaintiffs' § 1983 claims that Trey was denied his right to visitation with family for several days in violation of his First Amendment rights. The court concluded that "there is simply no evidence of a constitutional violation." The court next granted summary judgment to Defendants on Trey's parents' § 1983 claims that Defendants violated "their constitutionally protected rights of familial association." The district court reasoned that "Warden Toloso and Assistant Warden Sims are entitled to qualified immunity on the grounds that there was no clearly established constitutional right of a parent to recover for intrusion on a relationship with an adult child."

The court next granted summary judgment to Defendants on Plaintiffs' Louisiana state-law loss of consortium claims, reasoning that this cause of action only applies "where death does not occur." Furthermore, the court held that Plaintiffs' bystander claims "fail[] as a matter of law because Mr. and Mrs.

---

[4] Because the court held that there was no deliberate indifference, the court concluded that "it need not reach the *Monell* claim" against Sheriff Deen.

Bedingfield acquired knowledge of their son's injury after the fact [of the alleged denial of medical care to Trey]." The court explained that the bystander cause of action applies only to persons "who view an event causing injury to another person, or who come upon the scene of the event soon thereafter." Finally, the court granted summary judgment to Defendants on Plaintiffs' subrogation claims because Plaintiffs premised their claim "on a finding that there was wrongdoing on the part of" Defendants, and the court found no such wrongdoing. On July 27, 2011, the district court entered its judgment dismissing all of Plaintiffs' claims. Plaintiffs timely appealed the district court's judgment and several of the court's evidentiary and discovery rulings.

## II. DISCUSSION

### A. *Standard of Review*

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists if, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). When reviewing a grant of summary judgment, "we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343 (citation omitted). "[W]e draw all reasonable inferences in favor of the nonmoving party." *Id.* (citations and internal quotation marks omitted). "However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Id.* (citation and internal quotation marks omitted). We may affirm a grant of summary judgment "on any basis

supported by the record." *See Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011) (citation and internal quotation marks omitted).

We review a district court's evidentiary and discovery rulings for abuse of discretion. *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 927 (5th Cir. 2006) (citations omitted). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citation omitted). "If we find an abuse of discretion in admitting or excluding evidence, we next review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." *Id.* (citation omitted).

## B. *Deliberate Indifference Claims*

### 1. *Applicable Law*

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment." The Supreme Court has stated that the Eighth Amendment requires that prison officials provide inmates with adequate medical care. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." 429 U.S. at 104 (internal citation omitted). In *Farmer v. Brennan*, the Supreme Court elaborated on the standard of "deliberate indifference," explaining that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837; *see also Stewart v. Murphy*, 174 F.3d 530, 533-34 (5th Cir. 1999). Mere negligence or medical malpractice does not constitute a constitutional violation. *See Stewart*, 174 F.3d at 534. In order to make a

showing of deliberate indifference, plaintiffs must provide evidence that "prison officials refused to treat [the inmate], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (footnote, citation, and internal quotation marks omitted).

### 2. *The District Court's Exclusion of Plaintiffs' Hearsay Evidence*

On appeal, Plaintiffs argue that the district court erred in excluding as inadmissible hearsay their evidence regarding Trey's alleged statements about Warden Toloso's threats and intimidation. Plaintiffs assert that, to the extent that Trey's statements are considered hearsay, the statements "are admissible under the well-established exceptions to the hearsay rule set forth" in Federal Rules of Evidence 803, 804, and 807.

We conclude that Plaintiffs' arguments on appeal are unavailing. Plaintiffs have failed to provide any analysis demonstrating how Trey's statements fall under any of the cited hearsay exceptions. Also, we agree with the district court's thorough analysis and conclusion that Trey's statements do not fall under any of the hearsay exceptions. First, Trey's statements are not admissible under the Rule 803(3) state of mind exception. We have explained that Rule 803(3) "does not permit the witness to relate any of the declarant's statements as to *why* he held the particular state of mind, or what he might have believed that would have induced the state of mind." *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) (emphasis added). In *Cohen*, this court explained that Rule 803(3) "limit[s] those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because Galkin threatened me.'" *Id.* Here, Plaintiffs seek to introduce Trey's statements that Warden Toloso's intimidation prevented him from reporting medical problems and seeking medical treatment. Thus, these statements do not fall under the Rule

No. 11-30814

803(3) exception because the statements do not simply demonstrate Trey's state of mind, but indicate *why* Trey held his particular state of mind. *Id.*

Second, Trey's alleged statements do not fall within the dying declaration exception set forth in Rule 804(b)(2). In order to be admissible under this exception, "the declarant must have spoken without hope of recovery and in the shadow of impending death." *Shepard v. United States*, 290 U.S. 96, 99 (1933); *see also Pippin v. Dretke*, 434 F.3d 782, 793 n.10 (5th Cir. 2005). Plaintiffs failed to provide any summary judgment evidence indicating that Trey made these statements "in the shadow of impending death."

Third, Plaintiffs failed to show that Trey's statements are admissible under Rule 807. Rule 807, the residual exception to the hearsay rule, "is to be 'used only rarely, in truly exceptional cases.'" *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000) (citation omitted). "The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force." *Id.* (citation and internal quotation marks omitted). "In order to find a statement trustworthy, a court must find that the declarant of the . . . statement 'was particularly likely to be telling the truth when the statement was made.'" *Id.* (alteration in original) (citations and internal quotation marks omitted). Plaintiffs argued to the district court and on appeal that Trey had no motive to fabricate the statements and that the "contemporaneous nature and consistency" of Trey's statements demonstrate their trustworthiness. However, Plaintiffs' unsubstantiated assertions are insufficient to provide the court with the indicia of reliability and trustworthiness necessary to invoke Rule 807. We conclude that the district court did not abuse its discretion in excluding Plaintiffs' hearsay evidence.[5]

---

[5] On appeal, Plaintiffs argue that the magistrate judge reversibly erred in granting Defendants' motion for a protective order that quashed Plaintiffs' subpoena to City-Tel for the telephone records and recordings of Trey's telephone conversations during his incarceration.

14

No. 11-30814

### 3. Claims Against Warden Toloso and Assistant Warden Sims

On appeal, Plaintiffs present two arguments to demonstrate that Warden Toloso and Assistant Warden Sims were deliberately indifferent to Trey's medical needs in violation of the Eighth Amendment. First, Plaintiffs argue that Warden Toloso intimidated Trey, preventing him from reporting his medical problems and receiving medical treatment. Second, Plaintiffs argue that Warden Toloso and Assistant Warden Sims "knew that Trey had a serious medical problem that was scheduled to be addressed [by the endoscopy procedure], yet they were knowingly, willingly, and deliberately indifferent to it."

First, we conclude that Plaintiffs' argument regarding Warden Toloso's intimidation of Trey fails because Plaintiffs' sole evidence supporting this contention was properly excluded by the district court as inadmissible hearsay. Second, we conclude that Plaintiffs' argument relating to Warden Toloso and Assistant Warden Sims allowing Trey to forgo his endoscopy also fails. Through the March 9 kite communication form and the March 10 refusal of medical treatment form, Trey explicitly and voluntarily chose to forgo the endoscopy procedure. Plaintiffs assert that the prison officials had an obligation to ensure that Trey underwent the endoscopy even if Trey did not want to submit to the procedure. However, Plaintiffs fail to cite any authority for the proposition that Warden Toloso and Assistant Warden Sims were deliberately indifferent to Trey's health by not forcing Trey to undergo a medical procedure against his will.

The district court correctly concluded that the summary judgment evidence indicates that Trey saw a medical provider each time he reported a

---

Plaintiffs contend that this evidence was "crucial to establish [their] claims," yet Plaintiffs' own correspondence with City-Tel indicates that records of these calls were no longer active. We conclude that any error in the magistrate judge's order was harmless. *See Bocanegra*, 320 F.3d at 584 (stating that evidentiary rulings are reviewed under the harmless error standard).

medical problem.   Plaintiffs have not put forward any summary judgment evidence that Warden Toloso or Assistant Warden Sims knew that Trey had a serious medical need that was not being addressed, let alone that they prevented Trey from receiving medical care.   Thus, the district court properly concluded that Warden Toloso and Assistant Warden Sims were not deliberately indifferent to Trey's medical needs.

### 4. Claim Against Sheriff Deen

Plaintiffs also asserted a *Monell* municipal liability claim against Sheriff Deen, alleging that Sheriff Deen's "policy of deliberate indifference" was the moving force behind the harm to Trey.   *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978).   "A claim of municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citation and internal quotation marks omitted).   The district court correctly concluded that this claim fails because Plaintiffs did not create a genuine issue of material fact regarding whether Trey suffered a constitutional violation.   "[T]here can be no § 1983 [municipal] liability unless [the plaintiff] suffered a constitutional violation." *Id.* at 867.[6]

### C. Louisiana State-Law Negligence Claims

#### 1. Applicable Law

---

[6] Plaintiffs argue on appeal that the district court erred in prohibiting the deposition of Sheriff Deen.  Plaintiffs assert that Sheriff Deen, as "chief policy maker," had knowledge relevant to Plaintiffs' case.  We conclude that Plaintiffs cannot show that the district court's evidentiary ruling affected their substantial rights.  *See Bocanegra*, 320 F.3d at 584.  In their appellate brief, Plaintiffs state that the "evidence [they] sought to obtain from the Sheriff was necessary to demonstrate [*Monell*] liability."  However, as explained above, Plaintiffs' *Monell* claim against Sheriff Deen already fails because Plaintiffs failed to create a genuine issue of material fact regarding whether Trey suffered a constitutional violation.

Under Louisiana law, the "standard of care imposed upon the Department of Public Safety and Corrections in providing for the medical needs of inmates is that those services be reasonable." *Robinson v. Stalder*, 734 So. 2d 810, 812 (La. Ct. App. 1999) (footnote and citations omitted). In order to establish a negligence claim, Plaintiffs must show that Defendants failed to provide Trey with reasonable medical care and that Defendants' substandard conduct was the cause of Trey's untimely death. *See Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 322 (La. 1994).

### 2. *Analysis*

In granting summary judgment in favor of Defendants on Plaintiffs' negligence claims, the district court determined that (1) Plaintiffs did not present any evidence that Defendants failed to provide reasonable medical care to Trey and (2) Plaintiffs did not present any evidence that Defendants caused Trey's death. On appeal, Plaintiffs assert that Defendants were negligent because Trey was not seen by a physician every time he reported a medical problem. Plaintiffs also argue that Warden Toloso intimidated Trey, causing him not to seek medical treatment. Plaintiffs further contend that the district court erred in striking their expert evidence on causation.

We first consider whether Plaintiffs created a genuine issue of material fact as to causation. In order to do so, we must address whether the district court abused its discretion in striking the affidavit of Dr. Prather, Plaintiffs' expert on causation. The district court granted Defendants' motion to strike Dr. Prather's affidavit because Plaintiffs disclosed his affidavit five months after the Rule 26 disclosure deadline in the court's scheduling order.[7] On appeal, Plaintiffs concede that they erroneously designated Dr. Prather as a treating physician and that they should have disclosed Dr. Prather's report by the

---

[7] Rule 26 requires disclosures for a witness who is "retained or specially employed to provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B).

deadline in the scheduling order. However, Plaintiffs assert that we should reverse the district court's order because: (1) Plaintiffs believed in good faith that Dr. Prather was a treating physician and thus exempt from the disclosure deadline; (2) Dr. Prather's testimony is crucial to the success of their claims; and (3) no harm or prejudice resulted to Defendants from the lack of disclosure.

We have stated that a district court has broad discretion to enforce the deadlines in its scheduling order. *See Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir. 1992) (noting that "a trial court's decision to exclude evidence as a means of enforcing a [scheduling] order must not be disturbed absent a clear abuse of discretion") (citation and internal quotation marks omitted). In striking Dr. Prather's affidavit, the district court fairly enforced a scheduling order deadline. Furthermore, the district court was in the best position to assess Plaintiffs' arguments regarding their good faith, the significance of the evidence to their case, and the potential prejudice to Defendants, and the district court rejected these arguments. We therefore conclude that the district court did not abuse its discretion in striking Dr. Prather's affidavit.

Dr. Prather's excluded affidavit was Plaintiffs' sole evidence on causation, and therefore Plaintiffs provided no summary judgment evidence on this issue. Because Plaintiffs failed to create a genuine issue of material fact as to causation, which is an element of their Louisiana state-law negligence claim, Plaintiffs' negligence claims fail. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (stating that summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). We conclude that the district court did not err in granting summary judgment to Defendants on Plaintiffs' negligence claims.[8]

---

[8] Plaintiffs argue on appeal that the district court erred in denying their motion to strike the testimony of Dr. Grosbach, Defendants' expert on causation. Dr. Grosbach opined

No. 11-30814

## D. Denial of Visitation and Denial of Familial Association Claims

### 1. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* A public official is entitled to qualified immunity unless the plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2080 (2011). The Supreme Court has stated that the courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft*, 131 S. Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[T]he term clearly established does not necessarily refer to commanding precedent that is factually on all-fours with the case at bar, or that holds the very action in question

---

that, based on the "doubling times" of colon cancer, Trey's cancer was already terminal in March 2008. Plaintiffs assert that Dr. Grosbach failed to demonstrate the reliability of his methodology, particularly with respect to the "doubling times." We need not decide this issue. As explained above, because Plaintiffs failed to create a genuine issue of material fact as to causation, Plaintiffs' negligence claims fail.

19

unlawful." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256-57 (5th Cir. 2005) (citations and internal quotation marks omitted).  A right is clearly established "if in light of pre-existing law the unlawfulness [is] apparent."  *Id.* at 257 (alteration in original, citations and internal quotation marks omitted); *see id.* ("[T]he unlawfulness of their alleged conduct is readily apparent from relevant precedent in sufficiently similar situations.") (citations omitted).  The Supreme Court has recently stated that, for a right to be "clearly established," "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083 (citations omitted).

   *2. Analysis*

   Trey was diagnosed with terminal colon cancer at LSU Hospital on May 27, 2008.  Plaintiffs assert that Defendants, particularly Warden Toloso, unlawfully precluded Trey's family from visiting Trey in LSU Hospital for approximately five days after Trey's diagnosis.  Plaintiffs contend that they had to seek the assistance of a retired judge, who obtained an order permitting visitation on June 1, 2008.  Plaintiffs assert that they began visiting Trey daily at LSU Hospital on June 2.  Based on these allegations, Plaintiffs assert two separate constitutional claims.  First, in Trey's survival action, Trey's daughter asserts a claim under § 1983 for the denial of visitation in violation of Trey's First Amendment rights.  Second, Trey's parents assert a claim under § 1983 for the violation of their rights to familial association and parenthood in violation of their First and Fourteenth Amendment rights.  The district court granted summary judgment in favor of the Defendants on these constitutional claims. We will address each claim in turn.

   With respect to the denial of visitation claim, Plaintiffs argue that the district court erred in failing to recognize Trey's First Amendment right to visitation with family and friends.  In support of their First Amendment

argument, Plaintiffs only cite to one case, *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994), which stands for the general proposition that prisoners "retain their First Amendment rights to communicate with family and friends." *Id.* at 1100 (citation omitted). However, the *Reno* court's broad proposition of law does not support Plaintiffs' argument that an inmate has a clearly established right to visitation. In order to show that a right is "clearly established," Plaintiffs must show that "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083 (citations omitted). Because Plaintiffs have failed to point to any caselaw that indicates that a prisoner has a right to visitation, Plaintiffs have not demonstrated that Defendants violated Trey's clearly established rights. Therefore, we determine that Defendants are entitled to qualified immunity on this claim. *See id.* at 2080 (noting that an official is entitled qualified immunity unless plaintiff demonstrates "that the right was 'clearly established' at the time of the challenged conduct") (citation omitted). We conclude that the district court properly granted summary judgment in favor of Defendants on the denial of visitation claim.[9]

With respect to the denial of familial association claim, Trey's parents argue that Defendants deprived them of "their constitutional right to familial association with their son . . . by depriving them of their right to be with him during that time of great need." On appeal, Plaintiffs argue that the district court erred in failing to recognize this viable constitutional claim under the First and Fourteenth Amendments. However, Plaintiffs have failed to point to any

---

[9] In this case, we do not reach the issue of whether a prisoner has a constitutional right to visitation. However, we note that, in a case where a prisoner was denied visitation with his mother, we stated that a prisoner has "no constitutional right to visitation privileges." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (citation omitted); *see also McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975) (stating that, in the context of the denial of conjugal visits, a prisoner does not have a constitutional right to visitation).

caselaw that indicates that a parent of an adult child has a right to visitation with that child.[10]  Therefore, Plaintiffs have not demonstrated that Defendants violated a clearly established right to familial association.  *Ashcroft*, 131 S. Ct. at 2083.  Thus, we conclude that Defendants are entitled to qualified immunity and that the district court properly granted summary judgment to Defendants on this familial association claim.

*E.  Subrogation and Bystander Claims*

We conclude that Plaintiffs have not adequately briefed their arguments relating to their subrogation and bystander claims.  With respect to the district court's dismissal of their subrogation claims, Plaintiffs merely mentioned this issue in the "Statement of Issues" section of their appellate brief.  Because Plaintiffs failed to present any argument relating to this issue in the argument section of their appellate brief, this issue is waived.  *See Gen. Universal Sys. v. HAL, Inc.*, 500 F.3d 444, 454 (5th Cir. 2007); *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1067 (5th Cir. 1996).  Next, with regard to the district court's dismissal of their bystander claims, Plaintiffs raised this issue for the first time in their reply brief.  We do not consider arguments first raised in a reply brief.  *See United States v. Jackson*, 50 F.3d 1335, 1340 n.7 (5th Cir. 1995).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[10] For instance, Plaintiffs cite *Kipps v. Caillier*, 205 F.3d 203, 206 (5th Cir. 2000) (on denial of rehearing en banc), where we recognized "[a father's] constitutional right to familial association with his son (i.e, his right to preserve the integrity of that family relationship)." However, *Kipps* does not relate to the facts of the instant case.  In *Kipps*, a father was fired from his job because of his son's decision to play football for LSU.  *Id.*