# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10188
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2016

Lyle W. Cayce
Clerk

C3PO INTERNATIONAL, LIMITED,

Plaintiff - Appellant

v.

DYNCORP INTERNATIONAL, L.L.C.,

Defendant - Appellee

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-564

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

DynCorp International, LLC. is a military contractor that provided logistical support for the Department of Defense in Afghanistan. C3PO International, Ltd., a company apparently named after the Star Wars droid, supplied housing and other facilities for DynCorp personnel in Kabul. C3PO invested significant funds to acquire and improve North Gate, a civilian

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

compound which housed those personnel. Taliban attackers detonated a truck laden with explosives and stormed North Gate. After the Taliban attack, DynCorp moved its personnel to a different facility, and ultimately notified C3PO that it would not return to North Gate and thus was terminating the parties' contracts.

In July 2014, C3PO filed its original complaint arising out of the terminated contracts, alleging breach of contract, quantum meruit, and promissory estoppel. It filed a first amended complaint, asserting the same causes of action, in October 2014. Notably, the first amended complaint alleged that:

> [T]he blast, while initiated by the Taliban, was assisted by employees of DynCorp. Based on the security evaluation performed by the private security company hired by C3PO, there were several logistic workers for DynCorp that had subversive links with the Taliban—calling known insurgents days before and days after the blast. These workers were eventually arrested for their participation in this blast.

C3PO also argued, in response to DynCorp's subsequent motion to dismiss, that DynCorp did not have a right to terminate its contracts because "the event that allegedly triggered its right to terminate"—the attack on North Gate— "was caused, at least in part, by the actions of [DynCorp's] employees."

In February 2015, the district court partially granted DynCorp's motion to dismiss, holding that C3PO had failed to state claims for quantum meruit and promissory estoppel. It also rejected claims that DynCorp breached the contracts by terminating for convenience, failing to comply with certain security protocols, and not paying C3PO the full balance of the contract price. The district court allowed C3PO to proceed only on claims that DynCorp breached the contracts by: (1) failing to pay invoices for services rendered before the contracts were terminated; and (2) not participating in an equitable

No. 16-10188

adjustment process.   C3PO later abandoned its claim regarding unpaid invoices.

The district court entered a scheduling order setting these deadlines: December 16, 2015, for motions for leave to amend pleadings; December 23, 2015, for motions for summary judgment; and February 16, 2016, for completion of discovery.  The order set a pretrial conference for March 7, 2016, and trial for early the following month.

On November 30, 2015, approximately ten months after the district court ruled on DynCorp's motion to dismiss but a couple weeks before the deadline for seeking leave to amend, C3PO sought that permission, seeking to add claims for negligence and negligent hiring based on DynCorp employees' alleged involvement in the attack on North Gate.   The district court immediately denied the motion because it did not comply with the local rules.

On December 7, C3PO tried again, refiling the motion for leave to amend in compliance with the local rules.  Expressing concern that C3PO, "at this late date," was seeking to add new claims apparently based on facts alleged in C3PO's first amended complaint, the district court ordered supplemental briefing on several issues, including when C3PO acquired each piece of evidence relevant to its proposed negligence claims.  C3PO responded that, although a third-party security evaluation of North Gate had alerted C3PO, before it filed its first amended complaint, that DynCorp employees had been investigated for "subversive links," including "telephone traffic before and after" the North Gate attack, C3PO had only recently discovered corroborating evidence: a witness with personal knowledge that two DynCorp employees were arrested for their suspected involvement in the attack.   C3PO found this witness by searching Facebook for individuals it identified as people with possible knowledge of the attack, a tactic it began using in September of 2015.

3

No. 16-10188

Shortly after C3PO refiled its motion for leave to amend, DynCorp filed a motion for summary judgment.

On January 27, 2016, the district court denied C3PO's motion seeking leave to amend, again noting its "late date" and finding it "untimely." The district court also found the proposed second amended complaint did not state plausible claims for negligence or negligent hiring, such that permitting amendment would be an "act of futility."

C3PO sought reconsideration, which resulted in the district court providing additional reasons for its denial of the motion: C3PO waited "over one year after the first amended complaint had been filed and ten months after the [district] court had granted in part" DynCorp's motion to dismiss to propose a complaint alleging "the same basic facts," which were "known to [C3PO] all along." The district court concluded that C3PO "waited to assert its tort claims in a last ditch effort to avoid summary judgment," and that adding tort claims at that time "would be prejudicial to defendant and to the interests of justice" due to the imminent discovery deadline and trial date. "[I]n any event," the district court continued, adding the new claims would be futile.

The district court later granted DynCorp's motion for summary judgment on the contract claims that had survived the motion to dismiss. C3PO filed this appeal "from the Order entered on January 27, 2016 denying Plaintiff's Motion for Leave to file [a] Second Amended Complaint."

In general, we review the denial of a motion for leave to amend for abuse of discretion. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 347 (5th Cir. 2008). Rule 15 provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). A court may deny leave, however, when there

4

is: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) the amendment would be futile. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004); *Foman v. Davis,* 371 U.S. 178, 182 (1962).

In its opening brief, C3PO characterized the district court's decision as one based only on futility concerns, and thus only challenged the district court's decision on that ground. But the district court's orders—especially its order on C3PO's motion for reconsideration—found undue delay, dilatory motive, and undue prejudice, even if they did not use those exact words. By finding that the motion was "untimely," because it was filed at a "late date," "over one year after the first amended complaint," when C3PO knew the "basic facts" supporting its new claims "all along," the district court found undue delay. By concluding that C3PO "waited to assert its tort claims in a last ditch effort to avoid summary judgment," the district court found dilatory motive. And, by concluding that allowing amendment "would be prejudicial to defendant" because of pressing discovery and trial deadlines, the district court found undue prejudice.

A party that fails to adequately brief an argument on appeal waives it. *Legate v. Livingston*, 822 F.3d 207, 211–12 (5th Cir. 2016); *United States v. Scroggins,* 599 F.3d 433, 446–47 (5th Cir. 2010). Because C3PO did not present argument or authority in the analysis section of its opening brief contending that the district court abused its discretion in finding undue delay, dilatory motive, and undue prejudice, those issues are waived. *See Gen. Universal Sys. v. HAL, Inc.,* 500 F.3d 444, 453 (5th Cir. 2007); *Bedingfield ex rel. Bedingfield v. Deen*, 487 F. App'x 219, 233 (5th Cir. 2012).

In its reply brief, C3PO argues that it was not required to challenge grounds the district court gave for denying the motion for leave at the reconsideration stage, because the order on C3PO's motion for reconsideration

is not the subject of this appeal. It points to its notice of appeal, which cites only the original order denying leave to amend. C3PO cites no authority for the proposition that, when a party seeks reconsideration, prompting the district court to further explain the basis of a prior order before final judgment, we cannot consider that further explanation if the party only appeals the prior order. Given that it instigated the reconsideration process, C3PO cannot now ignore it. It would make little sense for us not to consider the amplified reasons the district court cited after giving the motion additional thought, as the district court could just repeat those reasons in the event we remanded. And despite C3PO's protestations in its reply brief, portions of its opening brief reflect its understanding of this obvious principle as it challenges the district court's ruling concerning Texas's economic loss rule, which appears only in the order on reconsideration.

Because the district court's order on reconsideration treated the unchallenged grounds of undue delay, dilatory motive, and unfair prejudice to the defendant as an independent basis for denying leave to amend, we need not address the futility question. *See Smith*, 393 F.3d at 595 (affirming a denial of a motion for leave to amend solely on the grounds of undue delay and undue prejudice).

The judgment of the district court is AFFIRMED.