[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13528

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAY DIAMOND,
a.k.a. Larry Allen Dilleshaw,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:19-cr-00008-TCB-RGV-1

_____

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

HULL, Circuit Judge:

After a two-day jury trial, defendant Jay Diamond was convicted of (1) impersonating a federal officer and employee in an attempt to avoid receiving a speeding ticket, in violation of 18 U.S.C. § 912 ("Count 1") and (2) impersonating a federal officer and employee in an attempt to avoid being arrested for falsely impersonating a federal officer, in violation of 18 U.S.C. § 912 ("Count 2"). On appeal, Diamond argues, *inter alia*, that: (1) the government failed to present sufficient evidence to establish that Diamond acted as a federal officer and (2) the district court erred in admitting evidence of his alleged prior bad acts and in instructing the jury. After review and with the benefit of oral argument, we affirm Diamond's convictions.

## I.    FACTUAL BACKGROUND

Here's the trial evidence, in the light most favorable to the government. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016).

### A.    Traffic Stop and Interaction with Deputy Baker

On August 23, 2018, Troup County Sheriff's Deputy William Baker pulled over Diamond for driving approximately 20 miles per hour over the speed limit. Deputy Baker approached the passenger side of Diamond's car to conduct a traffic stop. Diamond immediately told Baker that (1) he was on his way to recover his wife's stolen vehicle and (2) he was an air marshal and a senior air

marshal.  Baker asked Diamond if he had identification and Diamond stated, "I have my badge right here, but I'm an air marshal."  Diamond presented a badge with the words "United States Federal Air Marshal."

Deputy Baker then asked for Diamond's credentials, but Diamond stated, "all I have is my badge."  Diamond told Baker that he had another badge for when he was on the airplane and that the badge he presented was just the badge he carried in his pocket. Baker thought the badge looked like a toy and that Diamond's story was "shady."  Baker returned to his vehicle to run Diamond's license and investigate his air marshal claims.  Baker also called for backup.

Deputy Adam Richardson arrived at the scene as backup. Baker and Richardson discussed what happened, including Baker's belief that Diamond's badge was fake.

While on the side of the road, the deputies called Russell Edwards, a Transportation Security Administration ("TSA") officer with the Federal Air Marshal Service, to verify whether Diamond was a federal air marshal.  Edwards searched all of the agencies within the Department of Homeland Security, including the Air Marshal Service and TSA, but did not find Diamond in the system. Edwards told the deputies that there was no record of anyone named Jay Diamond being a current federal air marshal.  Edwards

4                        Opinion of the Court                    21-13528

also reported the incident to the Office of Inspector General for the Department of Homeland Security.[1]

Undisputedly, Jay Diamond was never employed as a federal air marshal or through the TSA.

## B.    Interaction with Deputy Richardson

Deputy Richardson approached Diamond and asked to see the badge he had provided Baker.  Diamond gave Richardson the badge and told Richardson that it was an "honorary badge" that he uses to get discounts at Home Depot.  Diamond also told Richardson that he was an assistant to the air marshal and described his purported duties.  Diamond stated that President Jimmy Carter gave him the badge and offered to show Richardson a photo of himself with President Carter.  Richardson believed that Diamond knew the deputies were "on to him" and was "trying to escape" by "trying to downplay it."

Diamond was arrested on state charges of impersonating an officer.  Diamond told the deputies he was not trying to impersonate an officer, and that he was just trying to be on the same side as the deputies because he is a patriot and supports law enforcement.

Both deputies' interactions with Diamond were audio and video recorded on their vehicles' dash cameras and played at trial.

---

[1] When an agency receives an allegation that someone is holding themselves out as a federal officer, "they are required to contact and report it, and there is a complaint that is generated."

## C.     Federal Arrest

On May 1, 2019, Department of Homeland Security agents Edward Kleppinger and Jerry Coleman arrested Diamond in Phenix City, Alabama on federal charges of falsely impersonating a federal officer.  They transported him to Atlanta, Georgia for his initial appearance.  The transport took approximately two hours, during which Agent Coleman was driving and Agent Kleppinger was sitting in the rear with Diamond.

The agents did not question Diamond during the transport, but Diamond "spoke quite a bit."  Diamond told the agents that "he had gotten his air marshal badge from his local law enforcement individuals."  Diamond also stated that "this was a misunderstanding" and that the badge "was more of an honorary badge."

After driving past a Troup County Sheriff's patrol car near where Diamond was pulled over on August 23, 2018, Diamond stated he wished he "had just taken the ticket."

## D.     Prior Bad Acts

At trial, Diamond's ex-wife, Christy Diamond, testified against Diamond.  According to Christy Diamond, Diamond never worked in federal law enforcement or served in the military. Christy Diamond stated that in early August 2018, she found the fake air marshal badge Diamond later presented to the deputies in Diamond's pants pocket and confronted him about it.  Diamond told her that he found it at his grandmother's house and jokingly asked, "I wonder what kind of discounts we can get with this."

Christy Diamond responded, "I hope you have more sense than to ever use a fake badge, because that is impersonation of an officer, and you can go to jail for that."

Christy Diamond also testified to four prior instances where Diamond received discounts or benefits based on the false pretense that he was a federal law enforcement officer or military member. First, on an anniversary trip to Knoxville, Tennessee, while trying to get a hotel room, Diamond told the hotel employee that he was with the U.S. Marshals office and requested a government rate. Christy Diamond walked away in shock, but Diamond later told her that their room "was comped for the night" and that they received an upgraded room. Second, on a family vacation in Panama City Beach, Florida, Diamond was able to get a spot at an RV park with no vacancies because, he said, he told the receptionist he was with the U.S. Marshals office. Third, on two occasions at Home Depot in Phenix City, Alabama, Christy Diamond recalled Diamond receiving a discount by saying he was in the military.

## II.    PROCEDURAL HISTORY

### A.    Motion to Exclude

Prior to trial, the government filed a notice of intent to introduce testimony from Christy Diamond pursuant to Federal Rule of Evidence 404(b). The anticipated testimony included the four prior instances where Diamond sought discounts or other benefits on the false pretense that he was a United States marshal or member of the military. Diamond responded and sought to exclude the evidence of these prior bad acts, arguing that Christy

21-13528                Opinion of the Court                7

Diamond's testimony was irrelevant and purely propensity evidence. The government argued that Christy Diamond's testimony was proper 404(b) evidence because it showed "a similar intent, motive, or plan on [Diamond's] part." The government also asserted that a limiting instruction would prevent any unfair prejudice.

At a pretrial conference, the district court denied Diamond's motion to exclude Christy Diamond's testimony. The district court concluded that the proposed testimony was relevant evidence of Diamond's intent and knowledge. At the close of the evidence, the district court instructed the jury about the limited permissible uses of the Rule 404(b) evidence.

## B.    *Batson* **Challenge**

During jury selection, the government used six peremptory strikes to preclude potential jurors. The government's strikes were against one white man, two white women, one black man, and two black women. The empaneled jury included eight women and three black jurors.

After jury selection, Diamond made a *Batson* challenge based on gender and race. Diamond argued that the government used five of its six peremptory strikes to preclude prospective jurors based on their gender and/or race. Without making an explicit finding as to whether Diamond had made a prima facie showing, the district court asked the government to provide explanations. The government proffered its justifications.

The district court denied Diamond's *Batson* challenge, essentially finding the government's justifications credible, race-neutral, and not based on sex.

## C.    Motion for Judgment of Acquittal

At the conclusion of the government's evidence, Diamond moved for a judgment of acquittal on both counts. Diamond argued that while the government presented evidence that Diamond made statements pretending to be an air marshal, the government failed to present sufficient evidence that Diamond performed an overt act while pretending to be an air marshal. Diamond argued that showing the deputies his fake badge was not an overt act but was "still in the act of pretending." The district court denied Diamond's motion. Diamond did not testify.

After the charge conference, Diamond renewed his motion for judgment of acquittal, which the district court denied.

## D.    Jury Instructions

During the charge conference, Diamond agreed that the pattern instruction for the § 912-impersonation crime should be given in its entirety. The § 912 pattern instruction stated:

> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> > (1) the Defendant pretended to be an officer or employee acting under the authority of the United States;

(2) the Defendant acted as such; and

(3) the Defendant did so knowingly with intent
to deceive or defraud another.

Nonetheless, Diamond requested an additional instruction to expand or explain what was meant by the "acted as such" element.

At first, Diamond proposed an instruction stating that the "acted as such" element required the government to prove that Diamond "committed some overt act involving an assertion of claimed authority derived from the office he pretended to hold."

After discussion about whether this instruction was even legally correct, the government argued that if the district court gave Diamond's proposed instruction, the term "overt act" would need to be defined. Diamond responded that "overt act" did not need to be defined because "it is a pretty self-explanatory term" and not ambiguous. Nonetheless, preserving his requested instruction, Diamond offered an alternative instruction that did not include the term "overt act." Diamond's alternative instruction was that as to the "acted as such" element, the government had to prove that Diamond "acted in a manner consistent with his pretended authority." Diamond noted that this alternative proposed instruction was given in *United States v. Bonin*, 932 F.3d 523, 532 (7th Cir. 2019).

The government agreed to Diamond's alternative proposed instruction, and the district court included it in the jury instructions. The district court instructed the jury that as to the "acted as such" element, the government had to prove that

Diamond "acted in a manner consistent with his pretended authority as an officer or employee of the United States."

Diamond also asked for a jury instruction on the misdemeanor offense in 18 U.S.C. § 701, which Diamond argued was a lesser included offense of his alleged § 912 crime. The district court concluded that § 701 was not a lesser included offense of § 912 because the elements of the two crimes were completely different. Therefore, the district court denied Diamond's request for a § 701 charge.

### E.    Conviction and Sentence

The jury found Diamond guilty on both § 912 counts. The district court sentenced Diamond to time served followed by a year of supervised release. Diamond timely appealed his convictions.[2]

## III.    STANDARD OF REVIEW

Generally, we review *de novo* challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the government. *Holmes*, 814 F.3d at 1250. Whether the evidence is direct or only circumstantial, we will accept all reasonable inferences and credibility choices that support the jury's verdict. *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012); *United States v. Williams*, 390 F.3d 1319, 1323-24 (11th Cir. 2004).

---

[2] On appeal, Diamond does not raise any issues as to his sentence.

We review preserved evidentiary rulings, including the admission of Rule 404(b) evidence, for an abuse of discretion. *United States v. Verdeza*, 69 F.4th 780, 788, 790-91 (11th Cir. 2023).

"We review a district court's refusal to give a requested jury instruction for an abuse of discretion." *United States v. Daniels*, 91 F.4th 1083, 1092 (11th Cir. 2024).

## IV.    DISCUSSION

### A.    "Acted as Such" Element

Section 912 provides that *"[w]hoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such*, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 912 (emphasis added). This case involves the first way § 912 may be violated: whoever falsely assumes or pretends to be a federal officer *and* acts as such.

The essential elements of this impersonating a federal officer crime are (1) "pretend[ing] to be an officer or employee acting under the authority of the United States," (2) "act[ing] as such," and (3) doing so knowingly with intent to deceive or defraud another. 18 U.S.C. § 912; *United States v. Gayle*, 967 F.2d 483, 485-87 (11th Cir. 1992) (en banc). On appeal, Diamond challenges the sufficiency of the evidence as to the second element—that he "act[ed] as such."

Our case law, albeit in the sufficiency of the indictment context, indicates that §912 requires only that the defendant engage in "*any* overt act consistent with the assumed character." *Gayle*, 967 F.2d at 488 (quoting *United States v. Cohen*, 631 F.2d 1223, 1224 (5th Cir. 1980)[3]).  Further, an indictment sufficiently describes the "acted as such" element when "it alleges any overt act consistent with the assumed character," even if the overt act also describes "assuming and pretending."  *Cohen*, 631 F.2d at 1224-25 (quotation marks omitted).  Likewise, the government's trial evidence will be sufficient to convict if it shows that the defendant "falsely assumed and pretended" to be a federal officer and committed any overt act in keeping with that assumed character. *See Cohen*, 631 F.2d at 1224; *Gayle*, 967 F.2d at 487-88.

Here, Diamond first expressly represented that he was a United States air marshal.  When Deputy Baker approached the car, Diamond immediately told Deputy Baker he was on his way to recover his wife's stolen vehicle and he was an air marshal. Diamond immediately pretended to be an air marshal in a hurry.

Then, when asked for his ID, Diamond presented a fake badge—an overt act to deceive the deputies further.  This in turn required Deputy Baker to check out his story and Deputy Richardson to ask more questions.  Diamond again acted to

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

deceive the deputies by offering to show a photo of himself with President Carter, who he had stated gave him the badge.

Diamond's main argument is that his presenting a fake badge alone does not constitute a sufficient overt act for a § 912 conviction. Diamond impermissibly tries to isolate his badge from the factual context in which Diamond presented his badge. The entire encounter undisputedly occurred in the context of Deputy Baker conducting a traffic stop of Diamond for speeding, wherein Diamond immediately made his federal officer impersonation. When Deputy Baker asked for an ID, Diamond acted in that persona by taking out and presenting his fake badge.

In addition, the cases Diamond cites help the government, not Diamond. For instance, Diamond cites *United States v. Roe*, 606 F.3d 180 (4th Cir. 2010), but ignores that the Fourth Circuit has held that the "acted as such" element is satisfied where the defendant "made some show of authority or held himself out as an officer to cause other individuals to change their behavior or police to conduct more investigation." *United States v. Ziegler*, 1 F.4th 219, 233 (4th Cir. 2021). Other circuits also have affirmed § 912 convictions in similar circumstances to this case. *See United States v. Ferris*, 52 F.4th 235, 240-41 (5th Cir. 2022) (finding that "the record fully support[ed] [the defendant's] conviction under § 912" where the defendant told a pharmacist he was an FBI agent doing field work in Texas and committed other overt acts, including wearing an FBI lanyard and displaying false credentials, to get the pharmacist to fill an out-of-state prescription for fentanyl patches);

*United States v. Gilbert*, 143 F.3d 397, 397-399 (8th Cir. 1998) (finding sufficient evidence to convict under § 912 where the defendant told officers during a speeding stop that he was a customs official, which required the officers to ask additional questions and call the United States Customs Service, a "course [they] would not have pursued but for the deceitful conduct" (quotation marks omitted)); *United States v. Hamilton*, 276 F.2d 96, 98 (7th Cir. 1960) (finding sufficient evidence to convict under § 912 where defendant claimed to be an FBI agent and wore a firearm in plain view).

Viewing the evidence in the light most favorable to the government, a reasonable jury could readily conclude that Diamond was acting as a United States air marshal to exert pressure on or influence the deputies to forgo issuing him a speeding ticket or other charge. *See Ziegler*, 1 F.4th at 234. Diamond's impersonation also caused Deputies Baker and Robinson to investigate his claim of authority. *See Gilbert*, 143 F.3d at 399. And presenting the deputies with a fake badge and describing his purported responsibilities were undoubtedly shows of authority, acts sufficient to convict him. At bottom, the evidence is amply sufficient to support Diamond's § 912 convictions.

## B.    Rule 404(b) Evidence

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Yet the rule permits evidence of prior bad acts for non-propensity

21-13528               Opinion of the Court               15

purposes, including proof of intent, motive, knowledge, and an absence of mistake. *Id.*

When, as in this case, intent is a "material issue," prior bad act evidence may be admissible to prove intent, but it "must be established by sufficient proof . . . [and] the probative value of the evidence must not be substantially outweighed by its undue prejudice." *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010); *see Gayle*, 967 F.2d at 486-87; *cf. United States v. Pepe*, 747 F.2d 632, 670 (11th Cir. 1984) (explaining that the evidence "showed that [the defendant] committed prior acts sufficiently similar to one or more crimes charged in the indictment to permit the inference that he intended to commit such crime").

Here, Christy Diamond's testimony was not used to prove Diamond's character but (1) to explain Diamond's intent, motive, knowledge, and absence of mistake and (2) to refute Diamond's trial defense that he did not intend to impersonate an officer. Diamond expressly recognized this in his closing arguments, stating that the government argued Christy Diamond's testimony "showed Mr. Diamond's intent."

Christy Diamond's testimony was sufficient to prove that the prior bad acts occurred, and the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. The evidence was directly relevant to Diamond's state of mind. *See United States v. Perry*, 14 F.4th 1253, 1275-76 (11th Cir. 2021); *see also United States v. Parker*, 699 F.2d 177, 180 (4th Cir. 1983) (finding no abuse of discretion in admitting evidence of

defendant's prior impersonation of a federal officer, "whose relevance is obvious and whose potential for unfairly prejudicing the jury was minimal"). Furthermore, in both its closing arguments and rebuttal closing arguments, the government emphasized that Christy Diamond's testimony was only to be used to determine Diamond's intent. And the district court gave a limiting instruction to that effect.

In sum, the district court did not abuse its discretion in admitting Christy Diamond's testimony. *See McNair*, 605 F.3d at 1203.

## C.    Requested "Overt Act" Jury Instruction

As discussed above, Diamond initially requested a supplemental jury instruction to expand or explain what is meant by the "acts as such" element of a § 912 crime. On appeal, Diamond argues reversible error occurred because the district court did not give his charge, to wit: that the "acted as such" element required the government to prove that Diamond "committed some overt act involving an assertion of claimed authority derived from the office he pretended to hold."

For several reasons, Diamond has shown no error in the district court's § 912 charge. First, the district court gave not only the pattern § 912 charge, but also a supplemental instruction, proposed by Diamond as an alternative to the supplemental instruction he initially requested and was denied, that addressed the "acts as such" element. Specifically, as to the "acts as such" element, the district court instructed the jury that the government

had to prove that Diamond "acted in a manner consistent with his pretended authority as an officer or employee of the United States." That is an accurate statement of the § 912 law as to that element. *See United States v. Lepowitch*, 318 U.S. 702, 704 (1943) ("Government officials are impersonated by any persons who assume to act in the pretended character." (quotation marks omitted)); *Gayle*, 967 F.2d at 487 (stating "an indictment is sufficient to satisfy the 'acts as such' language if it alleges any overt act consistent with the assumed character" (quotation marks omitted)); *Cohen*, 631 F.2d at 1224 (stating the "acted as such" prong of § 912 is sufficiently described in an indictment where it alleges that the defendant engaged in "any overt act consistent with the assumed character"); *see also Bonin*, 932 F.3d at 538 (stating that "acted in a manner consistent with his pretended authority as an officer or employee of the United States Marshals Service" was "an accurate restatement" of the overt act requirement). Therefore, the district court's charge adequately addressed the "acts as such" element.

Second, "a district court has wide latitude in determining the exact formulation of the jury instruction." *United States v. Mayweather*, 991 F.3d 1163, 1175 (11th Cir. 2021) (quotation marks omitted). "A trial court is not bound to use the exact words and phrasing requested by defense counsel in its jury charge." *United States v. Gonzalez*, 975 F.2d 1514, 1517 (11th Cir. 1992). Diamond thus was not entitled to his particular phraseology in his initial requested instruction.

Third, and in any event, it is questionable whether Diamond's particular phraseology accurately states the § 912 law. The language of Diamond's initial requested charge seemed to require some separate or distinct secondary act to be taken that was derived from the impersonated office a defendant pretended to hold. In other words, it suggested that a defendant not only must act to impersonate a federal officer, but also take a second step or action derived from that asserted federal office, such as attempting to investigate or arrest. But there is no such derivative second-act requirement in the § 912 text itself or our precedent to date. Rather, § 912 requires only "any overt act consistent with the assumed character." *See Cohen*, 631 F.2d at 1224; *Gayle*, 967 F.2d at 487-88. Indeed, the Fifth Circuit, relying on *Cohen*, recently rejected a substantially similar jury instruction that Diamond now advocates for. *Ferris*, 52 F.4th at 240 (finding that the defendant's requested instruction that the government must prove that "he committed 'an overt act that asserted authority' as an FBI agent— contradict[ed] [its] holding in *Cohen*" and was an "undoubtedly incorrect jury instruction.") Accordingly, to the extent Diamond's initial requested charge required such a separate or distinct secondary, derivative overt act, the district court did not err in declining to give the charge as it incorrectly stated the law. *See United States v. King*, 751 F.3d 1268, 1275 (11th Cir. 2014) (stating generally when a district court declines to give a requested jury instruction for which there was a sufficient evidentiary basis, we will reverse only if, among other things, "the requested instruction correctly stated the law" (quotation marks omitted)).

### D.    18 U.S.C. § 701 Jury Instruction

Diamond argues that 18 U.S.C. § 701 is a lesser included offense of § 912 and therefore that the district court erred in refusing to give his requested § 701 instruction. "A 'lesser offense' is an offense whose punishment is lesser in magnitude than the charged offense." *United States v. Gutierrez*, 745 F.3d 463, 468 n.4 (11th Cir. 2014). Because § 701 is a misdemeanor and § 912 is a felony, § 701 is a "lesser offense." But our inquiry only begins there.

"The Supreme Court has advanced an elements test for evaluating whether one offense is a lesser-included offense of another offense." *United States v. Stone*, 139 F.3d 822, 839 n.15 (11th Cir. 1998) (citing *Schmuck v. United States*, 489 U.S. 705, 716 (1989)). "For an offense to be a lesser-included offense of a parent offense, its elements must be contained within the elements of the parent offense, i.e., the elements of the prospective lesser-included offense must be a subset of those contained in the parent offense." *Id.* (citing *Schmuck*, 489 U.S. at 716); *see also Carter v. United States*, 530 U.S. 255, 260 n.2 (2000) ("When the elements of such a 'lesser offense' are a subset of the elements of the charged offense, the 'lesser offense' attains the status of a 'lesser *included* offense.'").

"To establish that the district court erred in refusing to give the lesser included offense instruction, [Diamond] must satisfy a two-part test." *United States v. Williams*, 197 F.3d 1091, 1095 (11th Cir. 1999). First, Diamond must satisfy the elements test. *Id.*

Second, Diamond must establish that in declining to give the § 701 instruction, the district court abused its discretion. *Id.*

As stated above, the elements of the § 912 impersonation offense, the alleged parent offense, are (1) "pretend[ing] to be an officer or employee acting under the authority of the United States", (2) "act[ing] as such", and (3) doing so knowingly with intent to deceive or defraud another. 18 U.S.C. § 912; *Gayle*, 967 F.2d at 486-87.

The elements of § 701, however, are not a subset of those elements of § 912. Section 701 criminalizes "manufactur[ing], sell[ing], or possess[ing] any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof, . . . except as authorized under regulations made pursuant to law." 18 U.S.C. § 701. The elements of a § 701 offense are that the defendant (1) knowingly manufactured, sold, or possessed an official badge, identification card, or other insignia (or colorable imitation thereof) of a federal law enforcement agency, (2) without authorization under regulations made by law, and (3) said badge, identification card, or other insignia was prescribed by the head of a federal department or agency for use by an officer or employee of the department or agency. *See id.*

In contrast to § 701, § 912 does not require that a defendant possess any type of badge at all as part of his impersonation. *See* 18 U.S.C. § 912; *Gayle*, 967 F.2d at 486-87. While the evidence

showed Diamond possessed and presented a fake badge, that was part of the active conduct by which he pretended to be and acted as a federal officer in this particular scenario.  It was evidence that proved the elements, but was not an element itself.  *See United States v. Kimberlin*, 781 F.2d 1247, 1255-57 (7th Cir. 1985) (evaluating the elements of the § 701 possession offense and the § 912 demanding-clause offense, and concluding that § 701 was not a lesser included offense, in part because "[§] 701, the possession offense, requires proof that defendant possessed official insignia although [§] 912, the impersonation offense, does not").

That Diamond's actual conduct here may have violated both statutes does not change our analysis of the statutory elements of the offenses at issue. *See United States v. Woodward*, 469 U.S. 105, 106-10 (1985) (comparing the statutory elements of 18 U.S.C. § 1001 and 31 U.S.C. §§ 1058, 1101 (1976) to determine whether one offense was a lesser included offense of another, declining to consider the evidence proffered to prove the offenses, and holding that 31 U.S.C. §§ 1058, 1101 (1976) was not a lesser included offense).

In short, Diamond has not shown that the § 701 elements are contained in § 912.  Because § 701 is not a lesser included offense of § 912, we need not address the second part of the test as to the jury charge. *See Williams*, 197 F.3d at 1095.

## V.    CONCLUSION

For the reasons stated above,[4] we affirm Diamond's two § 912 convictions.

**AFFIRMED.**

---

[4] On appeal, Diamond also challenges the district court's *Batson* ruling. However, we conclude that those claims lack merit and do not warrant further discussion.